UNITED STATES, Appellee

v.

Rafael A. PEREZ, Sergeant First Class
U.S. Army, Appellant

No. 05-0565

Crim. App. No. 9900680

United States Court of Appeals for the Armed Forces

Argued November 14, 2006

Decided December 28, 2006

EFFRON, C.J., delivered the opinion of the Court, in which BAKER and ERDMANN, JJ., joined.

STUCKY and RYAN, JJ., did not participate.


Counsel


For Appellant:  Frank J. Spinner, Esq. (argued); Major Billy B. Ruhling II and Captain Eric D. Noble (on brief).


For Appellee:  Captain Magdalena A. Acevedo (argued); Lieutenant Colonel Mary M. Foreman, Lieutenant Colonel Natalie A. Kolb and Major William J. Nelson (on brief).


Military Judges:  John P. Galligan and Stephen R. Henley


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Chief Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone, convicted Appellant, contrary to his pleas, of two specifications of rape, two specifications of forcible sodomy, indecent acts with a child under the age of fourteen, and indecent acts with a child under the age of ten, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 925, 934 (2000).  The adjudged and approved sentence included a dishonorable discharge, confinement for twenty-seven years, and reduction to the lowest enlisted grade.

The Army Court of Criminal Appeals reviewed the case on two separate occasions.  In the initial review, the court determined that the staff judge advocate's post-trial recommendation to the convening authority was defective, set aside the convening authority's action, and returned the case for a new recommendation and action.  United States v. Perez, No. ARMY 9900680, slip op. at 4 (A. Ct. Crim. App. Oct. 14, 2003); see Article 60, UCMJ, 10 U.S.C. § 860 (2000); Rules for Courts-Martial (R.C.M.) 1106, 1107.

Following preparation of a new recommendation, the convening authority approved the sentence adjudged at trial.  In its second review of the case, the Court of Criminal Appeals

2

United States v. Perez, No. 05-0565/AR

affirmed the findings and sentence in an unpublished opinion.

United States v. Perez, No. ARMY 9900680, slip op. at 4 (A. Ct.

Crim. App. Apr. 25, 2005).

On Appellant's petition, we granted review of the following

issue:

> WHETHER APPELLANT RECEIVED INEFFECTIVE ASSISTANCE
> OF COUNSEL IN THAT HIS DEFENSE COUNSEL CALLED THE
> VICTIM AS A WITNESS; ACKNOWLEDGED CREDIBILITY;
> CONCEDED THAT APPELLANT COMMITTED INTERCOURSE,
> INDECENT ACTS AND SODOMY; FAILED TO CALL
> FAVORABLE SENTENCING WITNESSES; AND FAILED TO
> OBTAIN FAVORABLE CLEMENCY MATTERS FOR
> PRESENTATION TO THE CONVENING AUTHORITY.

Appellant contends that his civilian defense counsel was

ineffective in three respects:  (1) calling the victim as a

witness who provided damaging testimony; (2) failing to call

additional witnesses during sentencing; and (3) failing to

contact Appellant prior to making defense counsel's post-trial

clemency submission to the convening authority.  For the reasons

set forth below, we affirm.


I.   BACKGROUND

A.   STATEMENTS PRIOR TO TRIAL

When Appellant's stepdaughter was a teenager, she told her

mother that she had been abused sexually by Appellant.  Her

mother brought her to the Army's Criminal Investigation Division

(CID) at Fort Hood, Texas, where she provided a written

3

statement describing sexual abuse over an eight-year period.  In the statement, Appellant's stepdaughter said that when she was five or six years old, Appellant engaged in various acts of oral sodomy and sexual abuse with her at Fort Leonard Wood, Missouri. The statement described further sexual abuse, including rape, at Fort Wainwright, Alaska, when she was between ten and twelve years old.  Subsequently, the family moved to Fort Hood. According to the stepdaughter, Appellant engaged in multiple incidents of sexual abuse with her at Fort Hood, which continued into the month in which she made the statement.  She estimated that Appellant had engaged in sexual activity with her several hundred times over the eight-year period, including sexual intercourse up to five times a week at Fort Hood.

During the ensuing investigation, Appellant provided a statement to the CID in which he admitted engaging in sexual intercourse with his stepdaughter on three occasions, one incident of oral sodomy, and several incidents of inappropriate touching.  The investigation resulted in charges against Appellant consisting of three specifications of indecent acts with a child, three specifications of forcible sodomy on a child on multiple occasions, and two specifications of rape on multiple occasions.

B. CONSIDERATION OF THE CHARGED OFFENSES AT TRIAL

At trial, the prosecution called the stepdaughter as a witness during the Government's case-in-chief. Under direct examination, she said that she could not remember providing a statement to the CID, and that she could not recall any of the events described in the statement. Over defense objections, the military judge admitted into evidence both the stepdaughter's pretrial statement and Appellant's incriminating statement to the CID. The prosecution also presented evidence that Appellant had admitted to a nurse that he had sexually abused his stepdaughter. The admissibility of these matters is not at issue under the grant of review in the present case.

During the defense case-in-chief, the stepdaughter testified as a defense witness. In contrast to her inability to recall information during her earlier appearance as a Government witness, she provided specific details as a defense witness. Her testimony as a defense witness at trial presented a significantly different picture of the scope of sexual activity than she presented in her pretrial statement.

In response to defense counsel's questions, she disavowed significant portions of her pretrial statement. She testified that at Fort Leonard Wood there had been no sexual intercourse, although there had been other sexual touching and oral sodomy; that at Fort Hood, there had been only one instance of sexual

intercourse, and no incidents of oral sodomy that she could recall; and that she had not told the CID that she and Appellant had engaged in sexual intercourse five times a week, as claimed in her written statement, but that the agents led her to those statements through their questioning.

Defense counsel's closing argument focused on the contrast between the stepdaughter's testimony in court and her pretrial statement. The argument sought to convince the military judge, as factfinder, that the sexual abuse was not as extensive as the Government alleged.

The military judge found Appellant not guilty of a number of the charged offenses, including the allegation of indecent acts with a child at Fort Hood and the allegation of forcible sodomy at Fort Hood. He found Appellant not guilty of committing rape at Fort Hood "on diverse occasions," finding him guilty of only one incident of rape at Fort Hood. He convicted Appellant of the remaining charges and specifications, making minor modifications in the wording to conform to the testimony at trial.

## C. SENTENCING

The defense sentencing case consisted of Appellant's unsworn statement and testimony from his stepdaughter and wife. After defense counsel told the military judge that he had no

additional sentencing evidence, the military judge questioned Appellant as to whether there were any other matters that he should consider.  Appellant confirmed that there were no other witnesses or documentary evidence that he wanted to bring before the military judge.

In the course of his closing statement on sentencing, defense counsel asked the military judge to consider the earlier testimony by First Sergeant KW, a Government witness during the findings portion of the trial.  Defense counsel noted that First Sergeant KW had testified about Appellant "being a good soldier, one of the best he ever saw."

During the Government's case-in-chief, First Sergeant KW had testified that he considered Appellant "to be a top-notch noncommissioned officer, highly dedicated, strong, strong leadership style"; that Appellant was "[o]utstanding" in terms of leadership, professionalism, and handling stress; and that on a scale of one to ten, he would rate Appellant at "a 9 and a half or 10."  The Government, in its closing argument, acknowledged that Appellant is "a good soldier" and that "he's done magnificent things in his career."

Appellant faced a maximum sentence that could have included life in prison.  The sentence imposed by the military judge included twenty-seven years of confinement.

D.  POST-TRIAL PROCEEDINGS

1.  The first clemency request

Following trial, defense counsel requested deferral of forfeitures and reduction in grade pending the convening authority's action so that Appellant could provide financial support for his family during that period.  The convening authority granted the request, subject to Appellant providing the funds directly to his family.  Defense counsel also provided a clemency submission to the convening authority, asking the convening authority to disapprove the punitive separation and limit confinement to no more than ten years.  The convening authority did not grant clemency, and approved the sentence as adjudged.

2.  The second clemency request

During the initial review of this case, the Army Court of Criminal Appeals set aside the convening authority's action and ordered a new staff judge advocate's post-trial recommendation and convening authority's action, based upon errors not at issue in the present appeal.  During the new proceedings before the convening authority, Appellant obtained representation by a new defense team, consisting of both civilian defense counsel and military defense counsel who had not participated in the original proceedings.  Defense counsel submitted a new clemency packet to the convening authority, urging consideration of legal

errors at trial as well as numerous clemency matters.  The clemency request included, among other things, Appellant's legal brief to the Army Court of Criminal Appeals, Appellant's letter to the convening authority, ten award citations, twenty-one enlisted evaluation reports, twelve positive inmate evaluation reports, and numerous positive letters from various people, including the chaplain at the United States Disciplinary Barracks, his work supervisor in prison, and Appellant's civilian pastor.  The staff judge advocate prepared a new recommendation to the convening authority, recommending approval of the adjudged sentence without modification.

The convening authority approved the adjudged sentence without modification and the Court of Criminal Appeals affirmed the findings of guilty and the sentence.


## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

A defendant who claims ineffective assistance of counsel "must surmount a very high hurdle."  United States v. Alves, 53 M.J. 286, 289 (C.A.A.F. 2000) (citations and quotation marks omitted).  Judicial scrutiny of a defense counsel's performance must be "highly deferential and should not be colored by the distorting effects of hindsight."  Id. (citing Strickland v. Washington, 466 U.S. 668, 689 (1984)).  To overcome the presumption of competence, an appellant must satisfy the two-

part test set forth in Strickland and demonstrate:  (1) "a deficiency in counsel's performance that is 'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment'"; and (2) that the deficient performance prejudiced the defense through errors "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  United States v. Moulton, 47 M.J. 227, 229 (C.A.A.F. 1997) (quoting Strickland, 466 U.S. at 687). As a general matter, "'[t]his Court will not second-guess the strategic or tactical decisions made at trial by defense counsel.'"  United States v. Anderson, 55 M.J. 198, 202 (C.A.A.F. 2001) (quoting United States v. Morgan, 37 M.J. 407, 410 (C.M.A. 1993)).

> [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

Strickland, 466 U.S. at 689 (citations and quotation marks omitted).

In cases involving attacks on defense counsel's trial tactics, an appellant must show specific defects in counsel's performance that were "unreasonable under prevailing

10

professional norms." United States v. Quick, 59 M.J. 383, 386
(C.A.A.F. 2004) (citation and quotation marks omitted).  An
appellant must also show prejudice.  Strickland, 466 U.S. at
687.  The test for prejudice is whether there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different.  Id.  We
consider whether counsel was ineffective and whether any errors
were prejudicial under a de novo standard of review.  Anderson,
55 M.J. at 201.

### III.  DISCUSSION

#### A.  TESTIMONY BY THE VICTIM

Appellant contends that his defense counsel's decision to
call the stepdaughter as a defense witness constituted
ineffective assistance of counsel.  A decision by trial defense
counsel to call the victim as a witness entails risks that must
be assessed under the particular circumstances of each case.

In the present case, defense counsel acted in light of a
prosecution case that included:  (1) the victim's pretrial
statement alleging extensive sexual misconduct; (2) Appellant's
statement to the CID that he had engaged in sexual misconduct
with his stepdaughter; and (3) Appellant's incriminating
admissions to a nurse.  Under defense counsel's direct
examination, the stepdaughter testified that the sexual activity

was not as frequent or as extensive as described in her statement to the CID. See supra Part I.B. The decision by the military judge to find Appellant not guilty of certain offenses and to modify others directly reflects the testimony presented by the stepdaughter at trial. See id. Under these circumstances, we conclude that Appellant has not demonstrated that defense counsel was ineffective under the first prong of Strickland.

## B. SENTENCING

Appellant contends that defense counsel was ineffective in not recalling First Sergeant KW to testify on his behalf during the sentencing hearing. He also contends that he provided defense counsel with a list of military officers, noncommissioned officers and members of his church who would have testified on his behalf on sentencing, and that defense counsel failed to contact any of these individuals.

With respect to First Sergeant KW, we note that defense counsel's sentencing argument expressly referenced the "good soldier" testimony that the witness had provided during the findings portion of trial. Moreover, by referring to earlier testimony rather than recalling the witness, the defense was able to avoid the risk of cross-examination. Under the

12

circumstances of this case, the decision to reference, rather than repeat, the earlier testimony was not ineffective.

We shall assume, without deciding, that Appellant provided defense counsel with the list of witnesses described in his affidavit, and that defense counsel was deficient for not contacting those witnesses. See Alves, 53 M.J. at 289-90. Appellant has not provided any specificity as to what those witnesses would have said if they had been called to testify at trial. In that posture, Appellant has not demonstrated prejudice under the second prong of Strickland. See Moulton, 47 M.J. at 229.

## C. POST-TRIAL CLEMENCY MATTERS

Appellant contends that during the initial post-trial process, the defense counsel did not consult with him and did not return his phone calls. According to Appellant, he was attempting to contact defense counsel in order to put counsel in touch with individuals who would have submitted letters in support of his clemency request. Appellant further contends that the clemency request did not represent his views or desires.

We shall assume, without deciding, that defense counsel failed to consult with Appellant before submitting a clemency petition, and that such performance was deficient under the

13

first prong of Strickland. See United States v. Lee, 52 M.J. 51, 52 (C.A.A.F. 1999); United States v. Hood, 47 M.J. 95, 97 (C.A.A.F. 1997). Appellant, however, has not provided specific information about what he or others would have submitted. In the absence of such information, Appellant has not demonstrated prejudice under Strickland. Moulton, 47 M.J. at 229. Moreover, Appellant has not demonstrated any prejudice in light of the decision by the Army Court of Criminal Appeals to set aside the first convening authority's action and return his case for a new action -- the very relief he would have been given had the Court of Criminal Appeals determined that the first action was tainted by ineffective assistance of counsel. In the second clemency petition, Appellant, in coordination with his new military and civilian defense counsel, provided the convening authority with extensive documentation of his successful military career and many positive letters from family and prison officials. No further relief is warranted.

## IV.  CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed.

14