STUCKY, Judge
(concurring in part and in the result):
I have concerns similar to those raised by Judge Ryan regarding the appropriateness of applying to the review of this Court’s own previous decisions the same habeas standards, under 28 U.S.C. § 2254 (2006), as federal courts apply in habeas reviews of state court decisions. Judge Ryan also makes an interesting point about our habeas corpus jurisdiction in cases in which direct appellate review has been completed. I write separately today, however, solely because I am convinced that the defense team’s performance was not deficient. I concur with the majority’s conclusion that, in any event, Loving failed to show that he was prejudiced by his counsel’s performance.
I. Effective Assistance of Counsel
A. The Law
“A military accused is entitled under the Constitution and Article 27(b), Uniform Code of Military Justice, (UCMJ), 10 U.S.C. § 827(b) (2000), to the effective assistance of counsel.” Denedo v. United States, 66 M.J. 114, 127 (C.A.A.F.2008). In reviewing claims of ineffective assistance of counsel, this Court employs the two-part standard of Strickland v. Washington, 466 U.S. 668, 692-93, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). United States v. Gutierrez, 66 M.J. 329, 330-31 (C.A.A.F.2008).
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland, 466 U.S. at 687, 104 S.Ct. 2052. These same standards apply to capital sentencing proceedings. Id. at 686, 104 S.Ct. 2052 (Strickland itself was a capital sentencing case).
“This Court reviews factual findings under a clearly erroneous standard, but looks at the questions of deficient performance and prejudice de novo.” United States v. Gutierrez, 66 M.J. 329, 330-31 (citing United States v. Paxton, 64 M.J. 484, 488 (C.A.A.F.2007)); United States v. Davis, 60 M.J. 469, 473 (C.A.A.F.2005).
The first part of the test requires an appellant to “show that counsel’s representation fell below an objective standard of reasonableness” “under prevailing professional norms.” Strickland, 466 U.S. at 688, 104 S.Ct. 2052 (citations omitted). “[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel’s challenged conduct on the facts of the particular case, viewed as of the time of counsel’s conduct.” Id. at 690,104 S.Ct. 2052.
Judicial scrutiny of counsel’s performance must be highly deferential_ A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the eon- *19 duct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.”
Id. at 689, 104 S.Ct. 2052 (citations omitted); United States v. Perez, 64 M.J. 239, 248 (C.A.A.F.2006). “[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.” Strickland, 466 U.S. at 690, 104 S.Ct. 2052.
As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness ease, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel’s judgments.
Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052.
B. Discussion
Appellant focuses his complaint of deficient performance on two aspects of the trial defense team’s conduct: (1) the failure to hire a mitigation specialist; and (2) the claim that a mitigation theory was initially formulated, and the subsequent investigation was restricted to its narrow confines. I find neither argument persuasive.
(1) Failure to hire a mitigation specialist
Citing the 1989 American Bar Association Guidelines for the Appointment and Perform-anee of Counsel in Death Penalty Cases (ABA Guidelines), Appellant asserts that the “prevailing professional norms” at the time required the defense team to secure the assistance of experts who could assist in the investigation and presentation of mitigating evidence. ABA Guideline 11.4.1.D.7(D) provides that “[cjounsel should secure the assistance of experts where it is necessary or appropriate for ... presentation of mitigation.” There is no requirement, even today, that a mitigation specialist be hired in every death penalty case.
Despite a gradually emerging practice of hiring a social worker or other mitigation specialist, the prevailing norm at the time of Appellant’s trial was for the defense team to conduct a reasonable, independent investigation into the accused’s family and background in an effort to discover mitigating evidence.
While use of an analysis prepared by an independent mitigation expert is often useful, we decline to hold that such an expert is required. What is required is a reasonable investigation and competent presentation of mitigation evidence.
United States v. Loving, 41 M.J. 213, 250 (C.M.A.1994). As the DuBay hearing[1] judge concluded, there was certainly no consensus as to the need for mitigation specialists in 1989.
Appellant was sentenced to death on April 3, 1989, and the ABA did not adopt the Guidelines until its February 1989 Midyear Meeting, while the defense team was litigating Appellant’s case. The ABA specifically noted in the introduction to the Guidelines that (1) “[wjhile some local standards may exist for capital representation, national guidelines on the assignment and performance of counsel in capital cases did not exist prior to these Guidelines,” and (2) the ABA House of Delegates’ resolution approving the Guidelines specifically provided “for such exceptions to the Guidelines as may be appropriate in the military.” Although we have found the Guidelines “instructive,” this Court has “expressly declined to mandate that mili *20 tary defense counsel meet” those guidelines. United States v. Murphy, 60 M.J. 4, 9 (C.A.A.F.1998) (concerning the appointment of death penalty qualified attorneys) (citing Loving, 41 M.J. at 300).
Appellant further argues that, contrary to the Supreme Court’s holdings in Wiggins v. Smith, 539 U.S. 610, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), and Strickland, the defense team formulated its theory of the sentencing case before they fully investigated, restricted the rest of the investigation to facts supporting that theory, and thus failed to discover important mitigating evidence. In Wiggins and Strickland, the trial defense counsel attempted “to justify their limited investigation as reflecting a tactical judgment not to present mitigating evidence at sentencing and to pursue an alternative strategy instead.” Wiggins, 539 U.S. at 521, 123 S.Ct. 2527 (referring to Strickland, 466 U.S. at 673, 104 S.Ct. 2052). In Williams, the Supreme Court found the “ineffectiveness claim meritorious” because “counsel’s failure to uncover and present voluminous mitigating evidence at sentencing could not be justified as a tactical decision to focus on Williams’ voluntary confessions, because counsel had not ‘fulfilled their obligation to conduct a thorough investigation of the defendant’s background.’ ” Id. at 522, 123 S.Ct. 2527 (quoting Williams, 529 U.S. at 396, 120 S.Ct. 1495).
Appellant’s defense team did form a tentative sentencing theory shortly after being assigned to the case, and Appellant is correct in asserting that now, years after he was sentenced to death, his family has come forward with some mitigating evidence. But the defense team at the time acquired all of the relevant school, medical, mental health, and military records. They interviewed Appellant extensively, visited his hometown, spoke to family, friends, teachers, law enforcement officials, and the community center boxing coach. They learned much about Appellant, his background, his family, and the community from which he entered military service, and were fully able to present that evidence to the court-martial. They also obtained the services of a forensic psychiatrist who had a law degree. The forensic psychiatrist reviewed all the records, including the sanity board and statements, spoke with the witnesses and at least one member of the sanity board, and examined Appellant.
Ultimately, the defense team decided not to have the forensic psychiatrist testify because they feared it would cause the military judge to release the full contents of the sanity board to the prosecution, revealing that Appellant had “sociopathic tendencies.” This is precisely the kind of tactical decision that, under Strickland, we will not second-guess. 466 U.S. at 689, 104 S.Ct. 2052; United States v. Perez, 64 M.J. at 243; United States v. Anderson, 55 M.J. 198, 202 (C.A.A.F.2001).
In Wiggins and Williams (529 U.S. at 396, 120 S.Ct. 1495), the defense teams abandoned their investigations prematurely because of the constraints of their tentative theories of their cases. Appellant’s defense team, on the other hand, did everything that the counsel in those cases failed to do. The scope of their investigation was reasonable under the prevailing professional norms “as seen ‘from counsel’s perspective at the time.’ ” Wiggins, 539 U.S. at 523, 123 S.Ct. 2527 (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052). Their performance did not fall “below an objective standard of reasonableness.” Strickland, 466 U.S. at 688, 104 S.Ct. 2052. They were, therefore, not ineffective.

. United States v. DuBay, 11 C.M.A. 147, 37 C.M.R. 411 (1967).