# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant JUAN J. BASABE
### United States Air Force

## ACM 38277

## 19 February 2014

Sentence adjudged 15 November 2012 by GCM convened at Joint Base McGuire-Dix-Lakehurst, New Jersey. Military Judge: Lynn Schmidt (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 42 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Zaven T. Saroyan.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Major Rhea A. Lagano; Major Brian C. Mason; and Gerald R. Bruce, Esquire.

Before

ROAN, MARKSTEINER, and SANTORO
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

SANTORO, Judge:

A military judge sitting as a general court-martial convicted the appellant, consistent with his pleas, of three specifications of wrongful possession of images of children engaged in sexually-explicit conduct, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The court-martial sentenced him to a dishonorable discharge, confinement for 4 years, forfeiture of all pay and allowances, and reduction to E-1. Pursuant to the terms of a pretrial agreement, the convening authority reduced the term of confinement to 42 months, but otherwise approved the adjudged sentence. Before us, the

appellant asserts: (1) His confinement in the same pod as foreign nationals violated Article 12, UCMJ, 10 U.S.C. § 812; and (2) He received ineffective assistance of counsel when his counsel failed to advise him of his rights under Article 12, UCMJ, and Article 138, UCMJ, 10 U.S.C. § 938, despite trial defense counsel's knowledge of military members being confined with foreign nationals.

*Background*

Following his conviction, the appellant was housed in the Monmouth County Correctional Institution (MCCI) in Freehold, New Jersey, pursuant to an agreement between the Department of Defense and local officials. He was in the MCCI for almost a month, from 15 November 2012 to 12 December 2012, until his transfer out of that facility to the Miramar Naval Brig. During the time he was housed at the MCCI, the appellant made no complaints either to the military or prison staff that he was housed with foreign nationals.

The appellant submitted his Rule for Courts-Martial 1105 clemency matters on 12 January 2013, after he had been transferred out of MCCI. His clemency submission made no mention of being housed with foreign nationals and no complaint at all about the conditions of his confinement.

For the first time on appeal, in a 29 April 2013 affidavit, the appellant stated that while at MCCI he was housed with inmates who were not United States citizens. He concluded the inmates were foreign nationals based on the inmates' statements to him that they were Mexicans who were going to be deported. The appellant's affidavit further stated that a prison official told his appellate defense counsel that Immigration and Customs Enforcement (ICE) detainees[1] were segregated from the general population. Despite the prison's separate housing rules, the appellant concluded that the two Mexicans with whom he was allegedly confined were nonetheless ICE detainees who had been moved into the "work pod" because of their willingness to work.

In support of his ineffective assistance of counsel claim, the appellant's affidavit stated that he "has been made aware" that his trial defense counsel, Captain (Capt) RC, knew there was an "ongoing problem with MCCI confining military members with foreign nationals." In support of that belief the appellant offers a 19 March 2013 e-mail message from Capt RC to his appellate defense counsel that reads in pertinent part: "I have heard clients complain that they do house aliens out there alongside the military inmates; however, I did not receive any such complaint from [the appellant]."

---

[1] Immigration and Customs Enforcement (ICE), an agency within the Department of Homeland Security, houses detainees in local jails and other contracted facilities while they are in immigration proceedings or awaiting their removal from the United States.

We ordered Capt RC to submit an affidavit addressing these issues. Capt RC stated he first became aware of allegations that foreign nationals might be housed with military inmates near the end of December 2012 or early January 2013, after the appellant had been transferred out of the facility. That allegation involved a different client and a pod other than the one in which the appellant had been housed and was never confirmed.

Capt RC also stated it was his standard practice to tell clients to contact him if they are housed in a civilian confinement facility alongside foreign nationals. He specifically recalled telling the appellant that he needed to have money with him when he went into confinement so that he could purchase a telephone card to call his attorney if necessary. Finally, Capt RC stated the appellant never complained of or suggested that he was being housed with foreign nationals.

*Violation of Article 12, UCMJ*

The Government argues that because a term of the appellant's pretrial agreement was that he waive all waivable motions, we should find that he has waived judicial review of this issue. We easily reject that position. Waiver is the intentional relinquishment or abandonment of a known right. *United States v. Olano*, 507 U.S. 725, 733 (1993). We find nothing in the record to suggest that at the time he entered his guilty plea, the appellant knew that he might be housed in civilian confinement alongside foreign nationals and prospectively waived his right to seek redress of a statutory violation that had not yet been committed. *See generally United States v. McFayden*, 51 M.J. 289 (C.A.A.F. 1999) (in an Article 13, UCMJ, 10 U.S.C. § 813, context, waiver will be operative only after judicial inquiry surrounding the conditions of confinement and accused's understanding of the potential remedy available).

We review de novo the question of whether an appellant's post-trial confinement violates Article 12, UCMJ. *United States v. Wise*, 64 M.J. 468, 473-74 (C.A.A.F. 2007). Article 12, UCMJ, states: "No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." The "immediate association" language means that military members can be confined in the same jail or brig as a foreign national, but they have to be segregated into different cells. *Wise*, 64 M.J. at 475.

In addition, "'[A] prisoner must seek administrative relief prior to invoking judicial intervention' to redress concerns regarding post-trial confinement conditions." *Id*. at 471 (quoting *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)). *See also United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997); *United States v. Coffey*, 38 M.J. 290, 291 (C.M.A. 1993). The purpose of this requirement is to promote the "resolution of grievances at the lowest possible level and [to ensure] that an adequate record has been developed to aid appellate review." *Wise*, 64 M.J. at 471 (quoting *Miller*,

46 M.J. at 250) (brackets omitted). "Since a prime purpose of ensuring administrative exhaustion is the prompt amelioration of a prisoner's conditions of confinement, courts have required that these complaints be made while an appellant is incarcerated." *Wise*, 64 M.J. at 471. "Exhaustion requires [the a]ppellant to demonstrate that two paths of redress have been attempted, each without satisfactory result." *Id*. The appellant "must show that absent some unusual or egregious circumstance he has exhausted the prisoner-grievance system in his [confinement] facility and that he has petitioned for relief under Article 138[, UCMJ, 10 U.S.C. § 938]."[2] *Id.* (quoting *White*, 54 M.J. at 472) (internal quotation marks and alterations omitted).

It is not disputed that the appellant failed to exhaust available administrative remedies that might have triggered an investigation into his allegation in a timely manner. For example, the appellant failed to file an Article 138, UCMJ, complaint; failed to submit a complaint with the Inspector General; failed to file a grievance with the confinement facility; and failed to inform his chain of command or his trial defense counsel about his situation. In fact, the appellant waited over four months after his transfer out of the MCCI to file an affidavit raising the issue.

The appellant asks that we excuse his failure to exhaust administrative remedies because his "imminent transfer to a military confinement facility would have undermined the utility of any attempt to seek redress" through normal processes. That argument may have been more persuasive had the appellant claimed that his comingling occurred during only his final day(s) at the MCCI. However, his affidavit generally suggests he was comingled, and he requests credit, for the entire 27 days he was at the MCCI. Moreover, there is no evidence to suggest the appellant knew he would be moved to Miramar or when such a transfer would take place. Finally, this argument is inconsistent with the appellant's statement that the reason he did not complain was because he did not know about the existence of Article 12, UCMJ, not that he had insufficient time in which to do so. On the evidence before us, we find no "unusual or egregious circumstance[s]" to excuse the appellant's failure to pursue available administrative remedies. *See Wise*, 64 M.J. at 471. We therefore conclude the appellant is barred from pursuing his claim.

---

[2]Article 138, UCMJ, 10 U.S.C. § 938, states:

> Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon.

*Ineffective Assistance of Counsel*

The appellant next argues he was denied his Sixth Amendment[3] right to effective assistance of counsel because his trial defense counsel failed to advise him about Article 12, UCMJ, or the process for resolving an Article 12, UCMJ, violation.

This Court reviews claims of ineffective assistance of counsel de novo. *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (citing *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006)). When reviewing such claims, we follow the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), where the appellant must demonstrate (1) a deficiency in counsel's performance that is "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) the deficient performance prejudiced the defense through errors "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

The deficiency prong requires the appellant to show his defense counsel's performance "fell below an objective standard of reasonableness," according to the prevailing standards of the profession. *Id*. at 688. The prejudice prong requires the appellant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In doing so, the appellant "must surmount a very high hurdle." *Perez*, 64 M.J. at 243 (quoting *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000)) (internal quotation marks omitted). This is because counsel is presumed competent in the performance of their representational duties. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). Thus, judicial scrutiny of a defense counsel's performance must be "highly deferential and should not be colored by the distorting effects of hindsight." *Alves*, 53 M.J. at 289 (citing *Strickland*, 466 U.S. at 689). We will not second-guess a trial defense counsel's strategic or tactical decisions. *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987) (citation omitted).

"[T]he defense bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance." *Tippit*, 65 M.J. at 76. *See also United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991) ("Counsel . . . has a duty to make reasonable investigations to determine what the true facts are."). When there is a factual dispute, appellate courts determine whether further factfinding is required under *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). We may decide a factual dispute without further factfinding when the "appellate filings and the record as a whole

---

[3] U.S. CONST. amend. VI.

'compellingly demonstrate' the improbability" of the facts alleged by the appellant. *Id*. at 248.

Capt RC's unrebutted affidavit states that he only became aware of allegations of comingling at MCCI *after* the appellant had been transferred to the Miramar brig. Therefore, we must consider whether, in the absence of information that might suggest a heightened duty to advise, Capt RC's performance was deficient as defined by the first *Strickland* prong. While we find Captain RC's affidavit more credible on this point than the appellant's, we will assume arguendo that the appellant was not advised of the requirements of Article 12, UCMJ, before he was placed in confinement. We have previously declined to require that trial defense counsel advise all clients who are sentenced to confinement about the parameters of Article 12, UCMJ. *United States v. McPherson*, 72 M.J. 862, 871 (A.F. Ct. Crim. App. 2013). We see nothing in the facts of this case that compels a contrary result.

The appellant has not met his burden under the first prong of *Strickland*, that is, he has not established the truth of the factual allegations underlying his claim that Capt RC's performance as trial defense counsel was deficient. *See Strickland*, 466 U.S. at 687. We conclude Capt RC effectively represented the appellant before, during, and after his court-martial.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court