# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––––

**No. ACM 39036**

––––––––––––––––––

**UNITED STATES**
*Appellee*

**v.**

**Richard J. CAMPBELL**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

––––––––––––––––––

Appeal from the United States Air Force Trial Judiciary

Decided 26 September 2017

––––––––––––––––––

*Military Judge:* Natalie D. Richardson and Matthew S. Ward (motions); L. Martin Powell.

*Approved sentence:* Bad-conduct discharge, confinement for 7 months, forfeiture of all pay and allowances, and reduction to E-3. Sentence adjudged 12 January 2016 by GCM convened at Nellis Air Force Base, Nevada.

*For Appellant:* Captain Patrick A. Clary, USAF.

*For Appellee:* Major Cara J. Condit, USAF; Major Collin F. Delaney, USAF; Major Mary Ellen Payne, USAF; Major Jeremy D. Gehman, USAF; Gerald R. Bruce, Esquire.

Before HARDING, SPERANZA, and HUYGEN *Appellate Military Judges.*

Senior Judge HARDING delivered the opinion of the Court, in which Judge SPERANZA and Judge HUYGEN joined.

––––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

––––––––––––––––––

HARDING, Senior Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas, of one specification of conspiracy to commit larceny and two specifications of larceny of military property of a value more than $500.00, in violation of Articles 81 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 921. The military judge sentenced Appellant to a bad-conduct discharge, confinement for seven months, forfeiture of all pay and allowances, and reduction to E-3. The convening authority approved the adjudged sentence.

Appellant asserts a single assignment of error:[1] whether trial defense counsel was constitutionally ineffective when he advised Appellant regarding the collateral consequences of his guilty plea. Although not raised as an assignment of error, Appellant nonetheless brought to the attention of the court alleged error regarding the effect of the pretrial agreement (PTA) limitation on the sentence to confinement as reflected in the staff judge advocate's recommendation (SJAR), addendum, and convening authority's action. Specifically, Appellant alleges error in that the action of the convening authority, consistent with the recommendation in the SJAR and addendum, approved seven months of confinement as adjudged, contrary to the PTA that the approved sentence would not exceed six months of confinement if confinement was adjudged. We agree that there was error regarding the approved confinement and consistent with the limitation of the PTA, we affirm only six months of the adjudged sentence to confinement. Finding no further error prejudicial to a substantial right of Appellant, we affirm the findings and sentence as modified.

## I. BACKGROUND

Prior to a permanent change of station move from Beale Air Force Base, California, to Osan Air Base, Korea in December 2011, Appellant entered into a sham marriage with JH in order to claim basic allowance for housing (BAH) at the with-dependent rate and family separation allowance (FSA). Appellant met and befriended JH at a convenience store that he frequented. JH was one of three women with whom Appellant discussed marriage in order to receive BAH and FSA while he was stationed in Korea and his purported dependent spouse remained in the continental United States. JH eventually agreed to marry Appellant in exchange for payments of $200 a month. Appellant and JH

---

[1] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). In addition to the specific claim identified by Appellant, we considered all other ineffective assistance of counsel claims implicitly raised by Appellant pursuant to *Grostefon*, 12 M.J. 431. We reject those remaining claims; they require no additional analysis and do not warrant relief. *See United States v. Matias*, 25 M.J. 356 (C.M.A. 1987).

entered into a prenuptial agreement, married, and further agreed to terminate their marriage upon Appellant's return to the United States. Between December 2011 and December 2013, Appellant fraudulently received $73,045 of dependent BAH and $6,233 of FSA.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

Appellant alleges that his trial defense counsel did not properly advise him on the impact his guilty plea and PTA would have on his eligibility for disability processing. Specifically, Appellant alleges that his trial defense counsel were deficient when they advised him "that as long as [he] did not receive a dishonorable discharge, [his] medical evaluation board should still go through and [he] would still receive [his] medical retirement and medical benefits." Appellant further claims he was prejudiced by his trial defense counsel's deficient advice as he "would **not** have pleaded guilty and entered into a pretrial agreement if [he] had known that the conviction and punitive discharge would affect [his] medical evaluation board and access to disability benefits." We conclude that the performance of Appellant's trial defense counsel was not deficient and thus there was no deficiency that could have resulted in prejudice.

The Sixth Amendment guarantees Appellant the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we conduct the two-part inquiry set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361–62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687). In reviewing for ineffectiveness, the court "looks at the questions of deficient performance and prejudice de novo." *United States v. Gutierrez*, 66 M.J. 329, 330–31 (C.A.A.F. 2008).

We begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). Accordingly, we "will not second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (citations omitted). When Appellant "attacks the trial strategy or tactics of the defense counsel, [he] must show specific defects in counsel's performance that were 'unreasonable under prevailing professional norms.'" *Id.* (quoting *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006)). We utilize the following three-part test to determine whether the presumption of competence has been overcome:

1. Are appellant's allegations true; if so, is there a reasonable explanation for counsel's actions?

2. If the allegations are true, did defense counsel's level of advocacy fall measurably below the performance ordinarily expected of fallible lawyers?

3. If defense counsel was ineffective, is there a reasonable probability that, absent the errors, there would have been a different result?[2]

*See United States v. Gooch*, 69 M.J. 358, 362 (C.A.A.F. 2011) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

Appellant's claim of ineffective assistance of counsel largely hinges on the resolution of a disputed question of fact pertaining to the advice given to Appellant regarding the collateral consequence of a punitive discharge on disability processing. Nonetheless, having applied the fourth and fifth principles announced in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), we can resolve the issue raised by Appellant without ordering a fact-finding hearing. We considered the entire record of Appellant's trial, a guilty plea during which he expressed his satisfaction with trial defense counsel, and concluded that while Appellant's declaration is factually adequate on its face, the appellate filings and record as a whole "compellingly demonstrate" the improbability of those facts. *Id.* Appellant's claim about his counsel's advice is fatally undercut by the sentencing limitation that Appellant agreed to in the PTA and his own words to the military judge in his unsworn statement.

In addition to his declaration discussed above, Appellant also provided declarations from two potential defense character witnesses who were present at the trial in support of Appellant. These witnesses in their declarations claim to have spoken with trial defense counsel and been told "the court-martial would have no bearing on the medical evaluation board." One also claims to have overheard trial defense counsel tell Appellant that the guilty plea would not affect the medical evaluation board.

Both of Appellant's trial defense counsel provided affidavits in response to Appellant's allegation. Contrary to Appellant's claim, both counsel state that

---

[2] In the guilty plea context, the first part of the *Strickland* test remains the same— whether counsel's performance fell below a standard of objective reasonableness expected of all attorneys. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). The second prong is modified to focus on whether the "ineffective performance affected the outcome of the plea process." *Id.* at 59; *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012). "[T]o satisfy the 'prejudice' requirement, [Appellant] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. As we do not find that trial defense counsel was ineffective, we need not address whether Appellant would have insisted on going to trial.

Appellant was advised any punitive discharge would halt the medical evaluation board and that avoiding a punitive discharge was a paramount goal during the negotiation for the PTA. The Government, however, was willing to agree only to not approving a dishonorable discharge in exchange for a higher confinement cap, leaving the possibility for the convening authority to approve a bad-conduct discharge. Trial defense counsel stated that Appellant was advised the PTA could allow him to avoid a dishonorable discharge but a bad-conduct discharge remained a possibility, with or without a PTA. Appellant ultimately agreed to a PTA that did not contain a limitation on the convening authority's ability to approve a dishonorable discharge or bad-conduct discharge. Instead, the only sentence limitation was an agreement by the convening authority to disapprove any confinement in excess of six months. According to trial defense counsel, Appellant signed the PTA and was told that the focus during the presentencing hearing would be to avoid the punitive discharge as that punishment would stop the disability process. During sentencing argument, trial defense counsel made the following appeal to the military judge:

> You can arrive at a just punishment that doesn't include a punitive discharge for him; one that doesn't . . . cut him off from . . . future opportunities for care and treatment that he actually needs.

Consistent with this strategy, Appellant included the following in his oral unsworn statement:

> I know that I must be punished for what I did was—what I had done wrong. I know I must atone for it. *I am begging you today for a punishment that allows me some hope of getting the treatment I need. If you are considering giving me a punitive discharge, I am asking you to give me more confinement instead. Whatever is necessary, just not a punitive discharge that would take away my care and treatment.* I know that I need to be punished. Jail can do this, and ensure that I still have access to my medication, treatment and care. In addition to the mental issues I am dealing with, I am also dealing with an anterior cervical discectomy and fusion, which has let me with permanent health problems. (Emphasis added)

First, there is no dispute as to trial defense counsel's assertion that, during the PTA negotiation, the Government was willing to not approve a dishonorable discharge but was not willing to eliminate the possibility of a bad-conduct discharge. If trial defense counsel had erroneously advised Appellant, as he claims, that "as long as [he] did not receive a dishonorable discharge, [his] medical evaluation board should still go through," then Appellant, relying on that

advice, would have been expected to agree to a term not to approve a dishonorable discharge, even if at the cost of more confinement. Such a term, consistent with the erroneous advice alleged, would have effectively shielded Appellant's disability case from the results of the court-martial. Appellant, however, did not opt for the protection of this term and instead agreed to a limitation on the length of confinement that could be approved by the convening authority. The choice he made—to limit confinement rather than eliminate the dishonorable discharge—is highly corroborative of the correct advice by his counsel and Appellant's understanding that any punitive discharge, dishonorable or bad-conduct, would make him ineligible for disability processing. Given that the offer to eliminate the dishonorable discharge would not achieve Appellant's goal of negating the impact of the court-martial on his disability case, trial defense counsel reasonably sought to reduce Appellant's confinement risk. Appellant's agreement to that specific and sole benefit is compelling circumstantial evidence that he was correctly advised and understood that any punitive discharge would make him ineligible for disability processing.

Secondly, Appellant's unsworn statement more directly shows he understood the effect of any punitive discharge on his disability case. He expressly begged the military judge not sentence him to a punitive discharge that would take away his care and treatment. Notwithstanding his current claims to the contrary, Appellant understood at the time of his unsworn statement that a punitive discharge, to include a bad-conduct discharge, would place the possibility of medical disability benefits in jeopardy. Furthermore, Appellant's clemency request was consistent with an understanding that any approved punitive discharge would make him ineligible for disability processing. Thus, he asked the convening authority to disapprove the adjudged bad-conduct discharge and permit him "to proceed with a medical discharge in order to receive the mental and physical help [he] desperately need[ed]."

The documentary evidence against Appellant, including claims for the allowances, payments, and electronic correspondence with JH, was strong. Combined with the availability of an immunized JH to testify about the sham marriage and their conspiracy to defraud the United States Air Force, proof of Appellant's guilt was overwhelming. Further, the moral turpitude and lengthy duration of his offenses as well as the large sum of money stolen by Appellant made a sentence that included a punitive discharge highly likely and exposed him to the risk of lengthy confinement. It was in this context that trial defense counsel advised Appellant and Appellant chose to plead guilty pursuant to the PTA with an understanding that any adjudged punitive discharge jeopardized his disability case.

The appellate filings and record as a whole "compellingly demonstrate" the improbability of Appellant's allegation. *Id.* Having resolved the factual dispute

against Appellant, we conclude that trial defense counsel's performance did not fall below a standard of objective reasonableness expected of all attorneys and therefore we need not determine whether there is a "reasonable probability that, absent the errors," there would have been a different result.

## B. Erroneous SJAR, Addendum and Action

The PTA, as noted above, included a limit on approved confinement of six months. The adjudged term of confinement was seven months. Notwithstanding the express language of the PTA, both the SJAR and its addendum erroneously recommended that the convening authority approve the sentence as adjudged. Consistent with those recommendations, the convening authority action approved the sentence of seven months of confinement as adjudged, instead of the six months as agreed in the PTA. Despite these errors, Appellant served a term of confinement consistent with the PTA's sentence limitation of six months, ostensibly because the confinement order correctly described the six-month confinement limitation of the PTA. Consistent with the limitation of the PTA, we affirm only six months of the adjudged sentence to confinement. We order that the action be withdrawn and new action substituted that conforms to the PTA. We further order promulgation of a corrected court-martial order.

## III. Conclusion

The findings of guilt and the sentence, as modified, are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and only so much of the sentence as provides for a bad-conduct discharge, confinement for six months, forfeiture of all pay and allowances, and reduction to E-3 are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

7