# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39209**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Marc A. SIMS**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 6 June 2018

————————————

*Military Judge:* Donald R. Eller, Jr.

*Approved sentence:* Dishonorable discharge, confinement for 31 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 20 October 2016 by GCM convened at Spangdahlem Air Base, Germany.

*For Appellant:* Major Patrick A. Clary, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges.*

Senior Judge HARDING delivered the opinion of the court, in which Judges SPERANZA and HUYGEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

HARDING, Senior Judge:

A general court-martial composed of a military judge found Appellant guilty, consistent with his pleas made pursuant to a pretrial agreement (PTA),

of one specification of attempted rape in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880; two specifications of rape in violation of Article 120, UCMJ, 10 U.S.C. § 920; three specifications of assault consummated by a battery in violation of Article 128, UCMJ, 10 U.S.C. § 928; and one specification of kidnapping in violation of Article 134, UCMJ, 10 U.S.C. § 934. The military judge sentenced Appellant to a dishonorable discharge, confinement for 31 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The PTA limited the term of confinement that could be approved to 36 years. The convening authority disapproved the adjudged forfeitures and waived the mandatory forfeitures for a period of six months, directing they be paid to Appellant's spouse, but otherwise approved the sentence as adjudged.

Appellant raises a single issue on appeal: whether his trial defense counsel were constitutionally ineffective because they offered as sentencing evidence Appellant's psychosexual evaluation report and expert testimony explaining this evaluation. We find no prejudicial error and affirm.

## I. BACKGROUND

In the early morning hours of 11 September 2015, Appellant raped his wife by penetrating her anus with his penis, placed her in a chokehold, bound her by applying restraints to her arms and legs, raped her again by penetrating her mouth with his penis, and wrongfully confined her against her will. On the evening of 22 April 2016, Appellant drugged SB, a woman he had met online, by administering her a sleeping aid without her knowledge in order to facilitate her anal rape. Appellant crushed sleeping tablets, mixed the resultant powder with water, and duped SB into drinking the drugged water by telling her it would help her avoid a hangover. SB quickly fell asleep but then woke up as Appellant was removing her pants and attempting to position himself to penetrate her anus with his penis. SB screamed at Appellant to stop. SB's mother, who was in the room next door, heard the screams and banged a shoe against the wall. During the guilty-plea inquiry, Appellant admitted he would have anally raped SB had she not woken up.

Based on the offenses with which he was charged, Appellant faced the possibility of confinement for life without eligibility of parole if convicted. Appellant entered into a pretrial agreement that limited his confinement exposure to 36 years. Based on the violent and repeated nature of the offenses committed by Appellant against his wife and his premeditated plan to drug and rape SB, trial defense counsel reasonably assessed a high likelihood that lengthy confinement would be adjudged and approached their sentencing strategy with that in mind. They obtained expert consultation from a forensic criminal psychologist who interviewed Appellant and produced a psychosexual evaluation

report. Trial defense counsel weighed the benefits and drawbacks and decided to offer the expert's testimony and report as a basis for the military judge to determine a sentence of confinement of less than 36 years. The Defense expert testified about his qualifications, the objective methodology for risk assessment for recidivism for sexual assault offenses, the objective testing completed on Appellant, and his interview of Appellant and provided his assessment of Appellant's risk of re-offending.

> So what I provided to the court is a hypothetical. If we go into the future by 11 years at the age of 40, what happens to these long-term markers of risk? Effectively they drop to what we describe as low, very close to zero. Now, that presupposes some things, and I would be glad to describe them.
>
> . . .
>
> That he is taking advantage of treatment program options, that he is making changes in his thought life, in his behavior, and kind of what is happening with that.
>
> . . .
>
> So part of what I am trying to offer the court is there is reason to be optimistic into the future, but it is contingent ultimately, and I shared that in my report, on time, but not just time, and treatment. And so I talk about that in the discussion section, that time, because of lowering testosterone and some other things, will be improvement in terms of risk, but you also notice in that discussion it says "and treatment." So time and treatment are really, I think, the strongest key factors that will bring the score down. But it still offers, I think, an objective point of reference to say there is reason to hope in this defendant's future that it is not always going to be this horrific high level of risk that he is at right now. There is a lot of reason to believe it will substantially decrease as times moves forward.

Trial defense counsel then used the expert's testimony and the psychosexual evaluation report as a framework for their sentencing recommendation.

> That tool really justifies a sentence anywhere from 11 to 31 years.[1] But 11 years is not appropriate. That is not enough time to satisfy that first component, the vengeance component. So we

---

[1] The Defense expert testified that when Appellant reached 60 years of age, his risk of recidivism would virtually be zero. Appellant was 29 years old at the time of his sentencing hearing.

> propose to you that 21 years is the perfect blend between being angry about the facts of this case, giving justice to the victims, and recognizing that there is hope of rehabilitation. And whether or not [Appellant] is truly rehabilitated, as a factual matter, the science says that he is not going to recidivate at certain age groups. Twenty-one years, he is 29 years old right now. That would put him at 50 years old.

Trial counsel, focusing on the aggravated nature of Appellant's repeated crimes, argued Appellant should be confined for 40 years and only briefly addressed the testimony of the defense expert and the psychosexual evaluation report and characterized the assessments of Appellant's future risk of recidivism over time as "all guesses." Notably, trial counsel did not argue what Appellant characterizes as "aggravating facts" from the report that were not otherwise available in the record to justify trial counsel's sentencing recommendation. The military judge sentenced Appellant to 31 years of confinement, nine years less than the Government recommendation of 40 years and five years below the PTA sentence limitation of 36 years.

## II. DISCUSSION

Appellant argues his trial defense counsel were ineffective in offering as sentencing evidence his psychosexual evaluation report and expert testimony explaining it. Appellant marshals three reasons to support his claim. First, the evaluation and expert testimony provided "aggravating privileged information" to the sentencing authority that was otherwise unavailable and that "influenced the term of confinement adjudged." Second, the expert testimony "rebranded potentially mitigating evidence—Appellant's suicide attempt—as an aggravator." Finally, the value of this evidence—Appellant's potential for long-term rehabilitation—could have been garnered by "less risky alternatives."

While Appellant is correct that his trial defense counsel offered evidence in the form of the psychosexual evaluation report and expert testimony that included negative information about Appellant, the trial defense counsel's explanation for doing so was reasonable and their level of advocacy was well within the performance standards ordinarily expected of fallible lawyers.[2]

The Sixth Amendment guarantees Appellant the right to effective assistance of counsel. U.S. CONST. amend. VI; *United States v. Gilley*, 56 M.J. 113,

---

[2] Having applied the principles announced in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), and considered the entire record of Appellant's trial, we find we can resolve the issues raised by Appellant without additional fact-finding.

124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984).

We review allegations of ineffective assistance of counsel de novo and utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

The United States Court of Appeals for the Armed Forces articulated in *United States v. Mazza*, 67 M.J. 470. 474–75 (C.A.A.F. 2009),

> Our analysis of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. We are not to assess counsel's actions through the distortion of hindsight; rather we are to consider counsel's actions in light of the circumstances of the trial and under the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). As a general matter, we "will not second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001) (quoting *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993)). Where, as here, an appellant attacks the trial strategy or tactics of the defense counsel, the appellant must show specific defects in counsel's performance that were "unreasonable under prevailing professional norms." *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006) (citations and quotation marks omitted).

Appellant's trial defense counsel were proactive in their approach to Appellant's sentencing case and demonstrated zeal on his behalf in obtaining expert assistance for sentencing in a case with a PTA. In determining whether to offer

the expert's testimony and report, trial defense counsel considered the serious nature of the offenses, the particularly aggravating circumstances of the offenses, and their belief about what might justify a lower sentence. Trial defense counsel believed the military judge deciding Appellant's case would consider a specific Defense sentence recommendation and supporting rationale more favorably than a general argument against lengthy confinement. While the Defense expert testified to Appellant's "horrific high level of risk" to re-offend at the time of trial, he also offered that with treatment and time the risk could drop "very close to zero" in 11 years when Appellant turned 40.

Appellant argues that Appellant's potential for long-term rehabilitation could have been presented through "less risky alternatives" than the Defense expert's testimony and report. For instance, the expert could have simply testified about general principles of recidivism without providing an opinion about Appellant's risk and exposing "aggravating privileged information." The trial defense counsel, however, assessed the information specific to Appellant as less aggravating than what one might infer about Appellant based on the circumstances of his offenses and decided to present the full picture of Appellant, which contained negative as well as positive aspects. This candid approach deliberately chosen by the trial defense counsel included subjecting the expert to cross-examination wherein he agreed that Appellant's suicide attempt during the assaults of his wife could be both an act of contrition or self-punishment and a means to control his wife and prevent her from reporting his crimes.

Recognizing Appellant faced the real probability of decades in confinement, trial defense counsel made a tactical decision. Appellant's best and most credible chance to lessen the sentence was to offer the expert testimony and report with a specific and favorable opinion on rehabilitation tailored to Appellant and based on a professional evaluation of Appellant. Trial defense counsel then used the expert testimony to buttress a specific confinement recommendation of 21 years. We will not second-guess trial defense counsel's deliberate and reasonable strategy to lessen Appellant's adjudged sentence to confinement. Accordingly, we find Appellant's trial defense counsel were not ineffective.

## III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court