UNITED STATES, Appellee,

v.

Matthew J. ALVES, Corporal, U.S.
Marine Corps, Appellant.

No. 99–0724.
Crim.App. No. 97–1610.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 3, 2000.

Decided Aug. 16, 2000.

EFFRON, J., delivered the opinion of the Court, in which CRAWFORD, C.J., GIERKE, J., and COX, S.J., joined. SULLIVAN, J., filed an opinion concurring in part and dissenting in part.

For Appellant: *Lieutenant Hardy Vieux,* JAGC, USNR (argued); *Lieutenant Commander L.J. Lofton,* JAGC, USN.

For Appellee: *Lieutenant Kevin S. Rosenberg,* JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler,* USMC, and *Commander Eugene E. Irvin,* JAGC, USN (on brief).

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted appellant of violating a lawful general regulation and of two specifications of aggravated assault with a means likely to produce death or grievous bodily harm, in violation of Articles 92 and 128, Uniform Code of Military Justice, 10 USC §§ 892 and 928, respectively. He was sentenced to a dishonorable discharge, 18 months' confinement, forfeiture of all pay and allowances, and reduction to pay grade E–1.

As a matter of clemency, the convening authority reduced the dishonorable discharge to a bad-conduct discharge and suspended all confinement in excess of time served (approximately 8 months) for a period of 12 months from the date of the action. The convening authority approved the remaining sentence. The Court of Criminal Appeals reviewed the record on two separate occasions. The court first affirmed the findings and sentence after the record was submitted without specific assignments of error. Subsequently, the court granted appellant's "Motion for Reconsideration and Leave to File Supplemental Pleading," which raised the issues now before our Court. After considering those issues, the Court of Criminal Appeals in an unpublished opinion affirmed the

findings and sentence approved by the convening authority.

We granted review of the following issues:

I. WHETHER APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE THE TRIAL DEFENSE COUNSEL FAILED TO MAKE AN ADEQUATE INVESTIGATION INTO THE FACTS AND CIRCUMSTANCES OF THE CASE.

II. WHETHER APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE THE TRIAL DEFENSE COUNSEL WAS PREJUDICIALLY DEFICIENT IN FAILING TO CONTACT AND PRESENT EVIDENCE FROM ESSENTIAL WITNESSES IN SENTENCING.

We affirm for the reasons set forth below.

### I. Background

Appellant, who had been drinking heavily with fellow Marines in a barracks room, was involved in three related altercations in rapid succession, which led to the charges against him. He pled guilty to each of the charges. During the providence inquiry, he stated that he could remember some but not all of the circumstances as a result of his consumption of alcoholic beverages prior to the altercations. In particular, he could not remember the critical moments related to the aggravated assault charges during which, according to witnesses, he pointed a loaded pistol at a fellow Marine and then placed it against the head of another Marine. In response to the military judge's inquiry, he stated that to the extent he could not remember specific details, he relied upon and accepted as true the statements provided to the Naval Criminal Investigative Service by witnesses to his actions.

During the post-trial proceedings before the convening authority, appellant was represented by a civilian defense counsel who had not represented him at trial. Appellant's new attorney provided a substantial post-trial submission to the convening authority, pursuant to RCM 1105 and 1106, Manual for Courts–Martial, United States (1995 ed.). The post-trial submission specifically addressed deficiencies in trial defense counsel's performance, including failure to interview witnesses and failure to present various matters in extenuation and mitigation during the sentencing phase. The post-trial submission included 10 character letters written by military members and civilians on behalf of appellant, three of which were from individuals appellant had previously identified to his trial defense counsel as potential character witnesses. The convening authority, after considering appellant's post-trial submission, mitigated the dishonorable discharge to a bad-conduct discharge and suspended any further confinement.

In his appeal to the Court of Criminal Appeals, appellant argued that he had been denied effective assistance of counsel, both at trial and during the sentencing phase, focusing on the same deficiencies raised by the civilian counsel in the post-trial submission. The trial defense counsel submitted an affidavit which did not dispute appellant's assertion that he had not interviewed any witnesses to the incidents, even though his client did not recall the critical moments of the alleged assaults. In the affidavit, trial defense counsel stated that he saw no reason to personally interview the victims in view of the written statements provided by the victims and witnesses to the Naval Criminal Investigative Service, as well as appellant's limited recollection.

Trial defense counsel added in the affidavit that he had made one attempt to submit a pretrial agreement to the convening authority. After it was rejected, he told appellant that it was still in his best interest to plead guilty without the benefit of a pretrial agreement. He also advised appellant that the court would look favorably upon a waiver of his pretrial investigation pursuant to Article 32, UCMJ, 10 USC § 832, because it would appear that appellant was willing to take responsibility for his actions by not being a burden on the Government.

With regard to the sentencing hearing, trial defense counsel acknowledged in the affidavit that appellant had provided him

with a list of witnesses for sentencing, but that he had limited the presentation to testimony of appellant and his father. He stated that he had not interviewed the other witnesses because he made a "tactical decision to not call any witness[es] ... who [were] of equal or lesser rank than [appellant.]" With respect to one potential witness, a staff sergeant who was superior in grade to appellant, trial defense counsel said that he made a tactical decision to not have him testify. He said that the staff sergeant, who worked in the armory, would have been cross-examined regarding appellant's violations of the rules pertaining to proper handling of weapons.

## II. Discussion

■ A defendant who claims ineffective assistance of counsel "must surmount a very high hurdle." *United States v. Moulton*, 47 MJ 227, 229 (1997), citing *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defense counsel is presumed to be competent. *Id.* Judicial scrutiny of such a claim is highly deferential and should not be colored by the distorting effects of hindsight. *Id.* To overcome the presumption of competence, an appellant must satisfy the two-part test set forth in *Strickland* and demonstrate: (1) "a deficiency in counsel's performance that is 'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment'; and (2) that the 'deficient performance prejudiced the defense [through] errors ... so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " *Id.*, quoting *Strickland, supra* at 687, 104 S.Ct. 2052.

■ The *Strickland* two-part test applies to guilty pleas and sentencing hearings that may have been undermined by ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see also United States v. Ginn*, 47 MJ 236, 246–47 (1997); *United States v. Boone*, 49 MJ 187 (1998). Trial defense counsel may be ineffective at the sentencing phase when counsel either "fails to investigate adequately the possibility of evidence that would be of value to the ac-

cused in presenting a case in extenuation and mitigation or, having discovered such evidence, neglects to introduce that evidence before the court-martial." *Id.* at 196 (footnotes omitted).

■ At their first meeting, appellant provided his trial defense counsel the names of six Marines, not including the alleged victims, that may have witnessed the alleged assault or the events that led up to it. Under the facts and circumstances of this case, the trial defense counsel's performance was deficient because he failed to interview any witnesses or conduct any investigation. *See Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Although it may be reasonable in the circumstances of a particular case for counsel, without making further investigation, to rely upon a client's recollection of events and the pretrial statements of eyewitnesses before advising the client how to plead, this is not such a case. In the present case, the finite number of witnesses, the role of alcohol in the incident, and appellant's inability to remember critical moments of the offense, underscore the responsibility of the defense counsel to interview the witnesses prior to advising his client whether to plead guilty to the charges. Trial defense counsel's actions fell below the standard that "[d]efense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction." ABA Standards for Criminal Justice, Standard 4–4.1 (3d ed.1993).

■ Even though counsel's performance was deficient, appellant must also meet the prejudice prong under *Strickland*, which requires appellant to show specifically that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. 366. Appellant has failed to demonstrate that had these witnesses been interviewed, he would

not have pleaded guilty. He had an unregistered gun in his room. He remembered retrieving the gun from a locked container, loading it with a magazine clip, and returning to Lance Corporal Hall's room in order "to scare Lance Corporal Hall so that the fight would stop." Appellant has failed to bring to the attention of this Court specific information—such as the substance of expected testimony from the victims—that would advise us precisely what the witnesses would have said that would have influenced appellant to plead not guilty to the charged offenses. *See Moulton*, 47 MJ at 229. Without such a showing, appellant has not demonstrated that counsel's error was prejudicial. *Strickland v. Washington, supra.*

■ With regard to sentencing, trial defense counsel should have explored the potential for introducing at trial good-military-character evidence for the purpose of demonstrating that appellant's actions on the night in question were out of character. Trial defense counsel's only explanation for the failure to interview sentencing witnesses recommended by appellant was that he made a tactical decision not to present the testimony of appellant's peers because they would carry little weight with the military judge. Without interviewing the witnesses, however, trial defense counsel was not in a position to make a tactical decision as to whether the witnesses would or would not have been valuable character witnesses. We also have reservations about trial defense counsel's suggestion that there was a tactical reason not to call the staff sergeant in order to prevent cross-examination regarding the weapon rules' violation. In view of the fact that appellant testified under oath during sentencing and was questioned both during direct and cross-examination on the very subjects that defense counsel claimed he was attempting to avoid, it is not apparent how the testimony of the staff sergeant could have harmed appellant.

■ Normally, ineffective assistance of counsel at the sentencing phase is prejudicial and requires a new sentencing hearing because the record does not contain the evidence that an effective counsel would have presented. *Boone*, 49 MJ at 198. In contrast to *Boone*, the evidence is available in the record of the present case. Appellant's new counsel during the post-trial proceedings effectively used the opportunity to interview pertinent witnesses and make a presentation to the convening authority that resulted in substantial sentence relief. On appeal, appellant has relied upon the matters contained in his post-trial submissions to demonstrate the deficiencies in his trial defense counsel's performance, and has not indicated that any additional evidence would have been presented by competent counsel.

In light of the substantial clemency given to appellant as a direct result of his civilian counsel's post-trial submission, the sentence was reduced to a bad-conduct discharge, confinement of time served (approximately 8 months), total forfeitures, and a reduction to pay-grade E–1. The convening authority's action was taken in the context of a post-trial submission that highlighted trial defense counsel's failure to present mitigation evidence at trial. By providing significant relief, he adequately addressed any prejudice appellant may have suffered as a result of his counsel's deficient performance at trial. *See United States v. Bono*, 26 MJ 240 (CMA 1988)(convening authority's reduction of sentence post-trial rendered deficient representation at trial harmless and prevented appellant from suffering substantial prejudice). Under the specific circumstances of this case, no further relief is warranted.

### III. Conclusion

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in part and dissenting in part):

I disagree with the majority's conclusion under prong one of the *Strickland* test that the performance of Capt S was deficient. I think it is appropriate to quote the affidavit of Capt S:

8. That between 25 November 1996, the day I met Cpl Alves, and his trial date of 12 February 1997, *I met with Cpl Alves*

*approximately 12 times to discuss his case and prepare him for trial.*

9. That during our discussions, Cpl Alves and I discussed pleading not guilty, *but came to a mutual agreement that the evidence against Cpl Alves was overwhelming.*

10. That during our discussion, Cpl Alves and I discussed pleading not guilty because he could not recollect pointing the weapon at anyone. However, when asked about the victims' statements, *Cpl Alves could not foresee any reason for the victims to lie in their sworn statements.*

11. That based on our discussions, Cpl Alves and I agreed that it would be in his best interest to plead guilty because it appeared very likely he would be convicted of all charges. We agreed that a plea of guilty was Cpl Alves best chance for leniency in sentencing.

12. That I explained to Cpl Alves that he could only plead guilty if he was willing to rely on the victims' statements because he could not remember pointing the weapon at them. *Cpl Alves indicated to me that he understood and had no reason not to believe what was in the victims' statements.*

\* \* \*

16. That in preparing for his trial, I concentrated on getting Cpl Alves through providency and on his sentencing case. Based on Cpl Alves' numerous representations that he had no reason to disbelieve the victims' statements, and based on his account of the incidents just prior to and just after the alleged incident, and the fact that the trial counsel had indicated no intentions of calling the victims to testify on sentencing, *I saw no reason to personally interview the victims.*

17. That in preparation for sentencing, I asked Cpl Alves to provide me with names of Marines he would like to have called on his behalf. He provided me Enclosure 4.

18. That I made a tactical decision not to call any witness on Enclosure 4 who is of equal or lesser rank than that of Cpl Alves.

19. That based on Cpl Alves' prior page 11's (Enclosure 5) and the fact that he worked in the armory, I made a tactical decision not to call SSgt Cole. The Government would have been able to cross-examine SSgt Cole on everything Cpl Alves did that went against what he had been taught while working in the armory. Additionally, Marines are taught proper weapons handling continuously and there simply is no way for any Marine witness to say anything positive about the way Cpl Alves handled his weapon that evening (which is worsened by the fact that he was illegally storing his personal weapon in his barracks room).

20. That I specifically addressed the issue of intoxication as a defense to his actions. I went over Enclosure 6 with Cpl Alves in detail. He indicated that he understood that his voluntary intoxication could not be used in his defense.

(Emphasis added.) It was not deficient performance for Capt S to rely on his conversations with appellant in deciding not to interview any of the victims or witnesses to the event. *See Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 MJ 186, 192 (CMA 1987); *Turner v. Williams,* 35 F.3d 872, 898 (4th Cir.1994), *overruled on other grounds* by *O'Dell v. Netherland,* 95 F.3d 1214 (4th Cir.1996); *State v. Thomas,* 285 Mont. 112, 946 P.2d 140, 143–44 (1997).

As the Supreme Court noted in *Strickland,* "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. Furthermore, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.* It was reasonable for Capt S not to have interviewed the witnesses who had already given statements because appellant told Capt S that there was no reason they would be lying.

*See State v. Thomas, supra; cf. Kimmelman v. Morrison,* 477 U.S. 365, 385, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (finding counsel's performance deficient where "[r]espondent's lawyer neither investigated, *nor made a reasonable decision not to investigate,* the State's case through discovery") (emphasis added).

I also do not believe that Capt S's performance during sentencing was deficient. Most ineffective assistance of counsel claims at the sentencing phase arise in situations where counsel fails either to call *any* witnesses at sentencing or fails to respond to character attacks by the Government. *See United States v. Boone,* 49 MJ 187, 196, n. 10 (1998). Capt S presented a case in mitigation at sentencing; it may not have been what appellant now asserts should have been presented, but it was not deficient, and Capt S's tactical decisions cannot now be second-guessed.

I agree with the majority's conclusions on the prejudice prong of the *Strickland* test. I would add, however, that as to prejudice, appellant is merely asserting that the prejudice to him is inherent because he was forced to rely on statements from unreliable witnesses. Aside from being a legally inadequate argument, *see United States v. Ginn,* 47 MJ 236, 247 (1997)("conclusory argument that 'prejudice is clear' from his counsel's defective performance is legally inadequate"), appellant is now trying to refute what he specifically stated to the contrary at trial: that there was no reason for him to believe that the witnesses were lying. The record does not indicate "there was a reasonable probability" that had Capt S interviewed the witnesses, appellant would have changed his plea. *Id.* Appellant himself stated to the military judge that he knew Capt S had not interviewed the witnesses and that if he had, the witnesses would just reiterate what was in their statements.

For the above reasons, I join the majority's affirmance of appellant's case.