# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist MIKEL K.W. TILLMAN**
**United States Army, Appellant**

ARMY 20160449

Headquarters, United States Army North (Fifth Army)
Douglas K. Watkins and Jeffery R. Nance, Military Judges
Colonel Jonathan A. Kent, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Tiffany M. Chapman, JA; Major Todd W. Simpson, JA; Captain Bryan A. Osterhage, JA (on brief); Major Jack D. Einhorn, JA; Captain Bryan A. Osterhage, JA (on reply brief).

For Appellee:  Colonel Steven P. Haight, JA; Major Hannah E. Kaufman, JA; Captain Jessika M. Newsome, JA (on brief).

31 January 2019

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FEBBO, Judge:

Appellant alleges his counsel were ineffective during a sexual assault trial by failing to utilize information about the victim's alcohol tolerance, mental health, and medical diagnosis.  We find appellant has failed to establish prejudice from any alleged deficiency by his counsel.  Accordingly, we affirm the findings and sentence.

This case is before us under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (2012) [UCMJ].[1]  Of the issues appellant raises on appeal, one warrants

---

[1]  A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual assault, in violation of Article 120, UCMJ. The military judge sentenced appellant to a dishonorable discharge and confinement for two years.  The convening authority approved the adjudged sentence.

discussion, but no relief.[2, 3]   Appellant claims his trial defense counsel were ineffective in various ways, to include failing to pursue evidence of the victim's potential medical condition – serotonin syndrome – that could have provided defense counsel other avenues to create reasonable doubt.  We disagree and affirm.

---

[2]  Appellant also asserts this court cannot complete a legal and factual sufficiency review of the charge of which appellant was convicted because the military judge, by exception, found appellant not guilty of the charge of sexual assault by bodily harm. The government, in one specification, charged appellant under two separate theories of criminal liability – committing a sexual act by bodily harm and a sexual act on a person incapable of consent:

> In that [appellant] . . . did . . . commit a sexual act upon [SPC GE], to wit: penetration of her vulva with his penis, by causing bodily harm to her, to wit: penetration of her vulva with his penis; when [SPC GE] was incapable of consenting to the sexual act due to impairment by a drug, intoxicant, or other similar substance, and that condition was known or reasonably should have been known by the accused.

The facts necessary to prove each theory are different.  The military judge found appellant guilty of the latter theory.

In conducting its Article 66(c), UCMJ, legal and factual review of a charge, this court may "consider evidence supporting an offense for which an appellant was acquitted in evaluating whether evidence supported a different offense of which an appellant was convicted."  *United States v. Rosario*, 76 M.J. 114, 118 (C.A.A.F. 2017).  The military judge, in excepting out the bodily harm language and finding appellant guilty of the second theory, did not acquit appellant of the penetrating SPC GE's vulva with his penis.  Both theories alleged a sexual assault by penetration of SPC GE's vulva with appellant's penis.  The second theory required the government to prove incapacitation and appellant's knowledge of SPC GE's incapacitation.  The remaining conduct of the specification constitutes an offense under Article 120, UCMJ.

[3] We have considered matters personally asserted by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982); they do not warrant relief.

## BACKGROUND

### A. *Facts and evidence adduced at trial*

Appellant and Specialist (SPC) GE were assigned as chaplain assistants at Fort Sam Houston, Texas. They were friends for several months and SPC GE considered appellant her "battle buddy." They had no romantic relationship; appellant was married and SPC GE had a boyfriend stationed in Japan.

For her twenty-first birthday, Specialist (SPC) GE wanted to celebrate with appellant and some other friends. Before going out, SPC GE "pregamed" in her room to get "buzzed" by drinking vodka and cranberry juice. Between 1800 and 2000, SPC GE drank two or three, eight to nine ounce glasses of vodka and cranberry juice. She did not take any medications that day. Afterward, SPC GE went over to Private (PV2) Hamilton's barracks room, where several other soldiers, to include appellant, were drinking. Appellant and PV2 Hamilton were friends. Specialist GE's memory became disjointed at this point in the evening. Although SPC GE initially declined offered drinks of tequila, she consumed more alcohol while at PV2 Hamilton's room. Specialist GE later could recall fragmented snapshots of what occurred the rest of the evening as she went in and out of consciousness.

Specialist GE recalled PV2 Hamilton pushing her onto his bed.[4] She next remembered waking up, with PV2 Hamilton in front of her, appellant moving behind her, and hearing PV2 Hamilton say, "come hit that." Appellant came up behind her and inserted his penis inside her vulva. She couldn't remember the actual penetration, but woke up with him moving his penis in and out of her vulva. She recalled putting her hands down to her vaginal area to stop appellant. After that attempt failed, she passed out. She could also remember lying on her back and seeing a person – not PV2 Hamilton – standing in the door.

Specialist GE's next memory was of falling on the floor, landing in her own vomit. After this occurred, she was able to find her cell phone and sent a video message to her friend, PV2 Woodhouse, asking for help. In this video, Specialist GE appeared very intoxicated. Private Woodhouse contacted SPC GE's supervisor, Chaplain McGruder and the two went to the barracks.

Once at the barracks, the chaplain spoke to appellant, who explained SPC GE came over to the room intoxicated, continued to drink, and eventually passed out. Since appellant and others at the party did not know where SPC GE lived, they left

---

[4] A military judge sitting as a general court-martial acquitted PV2 Hamilton of sexual assault of SPC GE, assault consummated by battery of SPC GE, and obstruction of justice.

her sleeping in PV2 Hamilton's barracks room. Chaplain McGruder and PV2 Woodhouse went into the room and found SPC GE lying unconscious in her own vomit, with her pants partially pulled down below her waist.

As Chaplain McGruder and PV2 Woodhouse drove SPC GE to the hospital, SPC GE hyperventilated, convulsed, and screamed while her eyes remained closed. Once there, the hospital staff had to restrain and intubate SPC GE. At around 0140 hours the next morning, SPC GE's blood alcohol content (BAC) registered at 0.160%.[5] Tests administered at the hospital did not detect other medications or drugs.[6]

The following day, a SANE examination was completed and DNA evidence was collected from SPC GE, PV2 Hamilton, and appellant. None of appellant's or PV2 Hamilton's DNA was found inside or on SPC GE. Specialist GE's DNA was detected from samples taken from the inside front area of PV2 Hamilton's underwear. Specialist GE's DNA was found on swabs taken from appellant's penis. A DNA expert testified at trial that it was 3.1 quadrillion times more likely that the DNA originated from SPC GE and appellant than appellant and an unknown individual.

During a subsequent interview conducted by the Army Criminal Investigation Command (CID), appellant explained that SPC GE arrived at PV2 Hamilton's room drunk. While there she drank more alcohol and acted somewhat different. Since she was drunk, appellant claimed he and PV2 Hamilton left her to sleep in the barracks room bed. Appellant did not testify at the trial.

*B. Trial*

At trial, the government presented two theories of criminal liability. The government alleged appellant caused bodily harm by penetrating SPC GE's vulva with his penis without her consent, and, alternatively, appellant penetrated SPC GE's vulva with his penis when he knew or reasonably should have known SPC GE was incapable of consenting to the sexual act due to impairment by a drug, intoxicant, or other similar substance.

---

[5] The actual BAC was 0.193%. However, the government expert testified that based on how the BAC was measured at the hospital, the actual results would indicate a BAC around 0.160%.

[6] The toxicology screen tested for alcohol, amphetamines, barbiturates, benzodiazepines, cannabinoids, cocaine, opiates, and PCP. The screen did not include tests for other drugs, to include Zoloft.

In support of the second theory, the government presented testimonial and documentary evidence to establish SPC GE's level of intoxication. The government also portrayed SPC GE as an infrequent drinker who was more susceptible to the effects of alcohol. A government expert testified – and the defense expert agreed – that SPC GE's BAC was around .214 mg/dl at the time of the assault. The government expert testified that for some people, this level of intoxication could result in a stupor or unconsciousness. The expert stated SPC GE's symptoms, to include unconsciousness, vomiting, and disorientation, were consistent with her level of intoxication.

The defense theory was to show, if sexual activity occurred, SPC GE was in a blacked out state and fully capable of consenting.[7] The defense cross-examined SPC GE, among other things, on inconsistencies in her testimony, gaps in her memory, and her history of alcohol use. The defense also impeached SPC GE with prior inconsistent statements, to include statements she made during the SANE exam that she was unsure about being penetrated during the assault.

Both the government and defense toxicology experts thought it would be highly unusual for someone – even with a .210% BAC – to exhibit such severe symptoms of intoxication as did SPC GE. The defense expert testified that SPC GE's level of intoxication was more consistent with the level that would cause a blackout, or alcohol induced amnesia. If SPC GE was blacked out she would not have memories of the evening but would have been capable of consent.

With regards to the DNA evidence, the government expert conceded on cross-examination that the test could not determine if the source of SPC GE's DNA was from fluid or skin cells. Defense counsel later argued that the DNA could have come from a source other than penile penetration.

At trial, neither the government nor the defense introduced SPC GE's medical records from her visit to the emergency room and subsequent stay in the hospital.

---

[7] We ordered appellant's trial defense counsel, Captains (CPT) NG and BJ to provide affidavits responding to the various IAC claims contained in appellant's initial brief to this court. Pursuant to *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), we have analyzed whether a post-trial evidentiary hearing is required. After applying the *Ginn* principles, we find such a hearing is not required in this case. *Id.* at 248. Considering the third *Ginn* factor, appellant's affidavit is factually adequate, and the government's affidavits do not contest the fact that an alternate defense theory focusing on evidence of serotonin syndrome or possible drug-alcohol interaction was not presented on the merits. Any factual disputes about the findings phase of trial are not controlling in deciding the legal issue of ineffective assistance of counsel on appeal.

Specifically, defense counsel did not explore the possibility of a drug-alcohol interaction or serotonin syndrome.

### C. Evidence related to ineffective assistance of counsel.

Appellant's IAC claim, in part, relates to his trial defense counsel's failure to explore or use at trial SPC GE's diagnosis of serotonin syndrome.

Prior to the trial on the merits, the government provided defense counsel redacted medical records of SPC EG's stay in the hospital following the assault (ICU records).[8] After obtaining these records, defense counsel submitted a motion under Military Rule of Evidence [Mil. R. Evid.] 513 to obtain SPC GE's mental health records, attaching as an exhibit the ICU records. In testimony on this motion, SPC GE admitted that she had been prescribed the drug Zoloft,[9] but had not taken the drug for about five days before the assault. The emergency medical staff nurse who treated SPC GE testified SPC GE's BAC was "very high" and she thought SPC GE was experiencing "acute alcohol intoxication." After hearing testimony from additional witnesses, the military judge denied defense counsel's motion.[10]

The ICU records reflected SPC GE was severely agitated and combative when brought to the emergency room and was therefore intubated and sedated. Medical personnel noted SPC EG had been prescribed Zoloft. The ICU records show SPC GE was diagnosed with serotonin syndrome and ethanol intoxication.

In preparation for trial, the military judge granted defense counsel's request for Doctor TL, a forensic toxicologist, to serve as a defense consultant. Doctor TL later testified for the defense at trial. Defense counsel provided Dr. TL, among other things, SPC GE's ICU records, which included the references to serotonin

---

[8] The redactions in the record related to SPC GE's mental health diagnosis.

[9] Zoloft is a selective serotonin reuptake inhibitor (SSRI) commonly prescribed for conditions such as depression, obsessive-compulsive disorder, panic disorder, post-traumatic stress disorder, and anxiety. *See* Prescribers Digital Reference, sertraline hydrochloride – Drug Summary, https://www.pdr.net/drug-summary/Zoloft-sertraline-hydrochloride-474.3608 (last visited 25 Jan. 2019).

[10] The military judge later denied defense counsel's request to reconsider the Mil. R. Evid. 513 ruling.

syndrome, and SPC GE's Zoloft prescription.[11] Appellant's trial defense counsel did not ask Dr. TL about serotonin syndrome and Dr. TL did not raise any concerns about the diagnosis to counsel.

The affidavits submitted by trial defense counsel do not indicate that they independently researched or consulted a medical doctor or mental health professional concerning serotonin syndrome. However, the ER nurse who treated SPC GE testified during the Mil. R. Evid. 513 motion hearing that SPC GE's alcohol level was "very high" and that a toxicology screening did not show the presence of any drugs in her system. Captain BJ noted that "[t]he hospital records indicated that serotonin syndrome was initially 'suspected,' but later noted her 'UDS [Urine Drug Test] was negative' and her 'supervisors are checking her dorm room [sic] for any evidence of a possible co-ingestion.'" In short, CPT BJ concluded that pursuing a possible "theory of drug-alcohol interaction" would not likely be successful.

### D. Serotonin Syndrome

Serotonin syndrome is a condition caused by excessive levels of serotonin in the body. *See* Edward W. Boyer & Michael Shannon, *Current Concepts: Serotonin Syndrome*, 352 N. Engl. J. Med. 1112 (17 Mar. 2005).[12] It is associated with various drugs, to include SSRIs, such as Zoloft. Signs of excess serotonin "range from tremor and diarrhea in minor cases to delirium, neuromuscular rigidity, and hyperthermia in life threatening cases." *Id.* Changes in mental status can, in

---

[11] At trial, Dr. TL stated he had reviewed numerous documents, to include the medical reports from SPC GE's visit to the hospital following the assault. Appellant, in his initial brief filed with the court, asserted counsel was ineffective for failing to inform Dr. TL with records showing the Zoloft prescription and serotonin syndrome diagnosis. We accepted a statement submitted by appellant from Dr. TL, made two years after the trial, wherein Dr. TL stated he did not recall being aware of the prescription or diagnosis. In this submission, Dr. TL stated he could not recall being aware SPC GE was proscribed Zoloft and Robaxin around the time of the assault. He also could not recall being aware of the possibility SPC GE could have been exhibiting the symptoms of serotonin syndrome the evening of the assault. Doctor TL stated the syndrome could have had bearing on the case and could have influenced his testimony. However, Dr. TL added that considering the video, it was hard to deny that SPC GE "obviously was extremely impaired no matter the cause."

In his reply brief, appellant conceded that the medical records were disclosed to Dr. TL.

[12] We granted counsel's motion to attach this article to the record in order to assess appellant's ineffective assistance of counsel claim.

moderate cases, "range from mild agitation or hypervigilance, as well as slightly pressured speech" and in, severe cases, agitated delirium. *Id.* at 1113. The condition can arise quickly, often within minutes of a change in medication or an overdose. *Id.* at 1114. In a majority of cases, symptoms appear within six hours after an initial use of the medication, an overdose, or a change in the medication. *Id.*

In support of his ineffective assistance of counsel claim, appellant submitted an affidavit from Lieutenant Colonel (LTC) DJ, a forensic psychiatrist stationed at Walter Reed National Military Medical Center, in which he discusses serotonin syndrome generally and in relation to this case.[13] Among other documents, LTC DJ reviewed SPC GE's medical records, toxicology records, and trial testimony.

Lieutenant Colonel DJ notes that SPC GE was prescribed sertraline (Zoloft), an antidepressant known as "a specific serotonin reuptake inhibitor (SSRI)." He asserts that individuals taking SSRIs can, rarely, develop a life-threatening condition known as serotonin syndrome. He states "[t]his condition can occur from normal doses such as 100mg per day, or during an overdose on an SSRI (such as during a suicide attempt), or when an SSRI is combined with another medication or substance that also elevates serotonin levels." Lieutenant Colonel DJ states that a person taking Zoloft would experience elevated serotonin levels for four to five days after they stopped taking the medication. In the case of an overdose of an SSRI, the condition can occur quickly, within minutes. The mental status changes due to serotonin syndrome include "anxiety, agitated delirium, restlessness, and disorientation." Lieutenant Colonel DJ states "delirium refers to a state of waxing and waning consciousness which may include patient responses to imagined or perceived threats or a complete misinterpretation of environmental stimuli." Lieutenant Colonel DJ opines that "[i]t is possible for delirium to be confused with alcohol intoxication" as "[i]n both states, individuals may speak incoherently or nonsensically, and out of character," and "be physically discoordinated."

Lieutenant Colonel DJ opines that SPC GE's medical condition could not have been caused by alcohol alone. For example, "her blood alcohol level of 193 mg/dl and the experts' back extrapolation to roughly 200-210 mg/dl is not typically consistent with someone who would require intubation at the hospital." He states that SPC GE "presented with an altered mental status in her cell phone video which was consistent with someone experiencing an adverse reaction to serotonin and alcohol."

Additional facts in resolving the appellant's IAC claim are included in the following discussion.

---

[13] LTC DJ took no part in appellant's trial. Appellant submitted this affidavit after the government filed its brief to this court.

**LAW AND DISCUSSION**

We review claims that an appellant did not receive effective assistance of counsel de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015); *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687, (1984)).

Under the first *Strickland* prong, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. "An appellant must establish a factual foundation for a claim of ineffectiveness; second-guessing, sweeping generalizations, and hindsight will not suffice." *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005) (citing *United States v. Key*, 57 M.J. 246, 249 (C.A.A.F. 2002); *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000); *United States v. Gray*, 51 M.J. 1, 19 (C.A.A.F. 1999)). In assessing counsel's performance, "we do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine whether counsel made an objectively reasonable choice in strategy from the available alternatives." *Akbar*, 74 M.J. at 379 (citing *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001)) (internal quotation marks omitted). In determining this issue, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

Appellant claims his counsel were deficient in a number of ways throughout findings. To summarize, appellant believes counsel failed in various ways to: introduce SPC GE's behavioral health issues or medical records from the hospital to show an attempted suicide "was a distinct and real possibility;" conduct a full cross-examination of SPC GE concerning her prior alcohol experience or cross-examine the government's expert in this regard; effectively use SPC GE's text messages that demonstrated her tolerance to alcohol use; and seek the right expert or make more of an effort to explore strategies surrounding serotonin syndrome.

Defense counsel's strategy appears to have been reasonable when viewed in light of the facts available to them at trial and limitations imposed by the military judge's Mil. R. Evid. 412 and Mil. R. Evid. 513 rulings. Despite appellant's claims, defense counsel, in our view, were able to credibly demonstrate key aspects of their

theory that it was possible SPC GE blacked out, rather than passed out, at the time of the assault, an argument supported by the testimony of the expert toxicologists.

Appellant's real focus, it appears, is whether counsel did enough to investigate serotonin syndrome and the possible ways it could have furthered the defense strategy or otherwise provided an alternate explanation than that proffered by the government (alcohol intoxication) for SPC GE's apparent incapacity when found in the room and when later taken to the hospital. That is, defense counsel did not do enough to find evidence to challenge the government's claim that SPC GE's condition after the incident and at the hospital was proof that she was so impaired by alcohol at the time of the assault that she was unable to consent.

In this respect, trial defense counsel relied upon their toxicology expert in reviewing the medical records without, apparently, independently researching serotonin syndrome, its causes, or outward manifestations or consulting with a physician or a mental health professional. However, we need not decide whether this rendered the defense counsels' pretrial investigation lacking or performance at trial deficient.

### B. Lack of Prejudice

"When reviewing ineffectiveness claims, 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant.' Rather, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *United States v. Datavs,* 71 M.J. 420, 424-25 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 697). To establish prejudice, an appellant must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). That is, "absent the errors, a factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.

For purposes of assessing prejudice, we accept LTC DJ's affidavit concerning serotonin syndrome at face value. Notwithstanding this affidavit, we are not convinced defense counsel has demonstrated the probability that the outcome at trial would have been different had counsel pursued a theory involving serotonin syndrome. Appellant's arguments for prejudice require several layers of speculation. *United States v. Clemente*, 51 M.J. 547, 551 (Army Ct. Crim. App. 1999) (an appellant has the responsibility to bring to an appellate court's attention facts rather than mere speculation as relief cannot be granted, under *Strickland*, based on mere speculation).

First, appellant asserts that serotonin syndrome would have provided an avenue to argue that SPC GE consented to sexual relations and then overdosed on serotonin in an attempt to commit suicide out of guilt since she had a fiancé. This claim is based purely on conjecture that SPC GE tried to commit suicide after consensual sex. This assumes that SPC GE actually took Zoloft following the assault, a fact not supported by any evidence adduced at trial and seemingly contradicted by other evidence. SPC GE testified she had not taken Zoloft that day. During the Mil. R. Evid. 513 motion hearing, she testified she had last taken the drug five days prior to the assault. Even statements by appellant indicated SPC GE showed up at the room intoxicated and eventually passed out.

Second, appellant asserts serotonin syndrome could have explained SPC GE's rapid deterioration after the assault, which would have been wholly consistent with the defense theory that SPC GE was merely blacked out, and capable of consenting, at the time of the assault. Lieutenant Colonel DJ states that serotonin syndrome can manifest itself even up to five days after discontinuing the medication and that alcohol can increase the risk of serotonin syndrome. Defense counsel, in our opinion, adequately obtained from its toxicology expert that SPC GE could have been experiencing a blackout at the time of the assault, and thus could have simply not remembered consenting. Thus, it is not reasonably probable that this theory would have added to the blackout possibility already advanced by defense counsel.

Third, appellant posits that serotonin syndrome could have resulted in SPC GE's rapid decline during the encounter and, consequently, she may have misinterpreted events and "environmental stimuli" at the time. This too we find speculative. Lieutenant Colonel DJ's affidavit and defense appellate exhibits show serotonin syndrome's manifestations can include "anxiety, agitated delirium, restlessness, and disorientation." Given the description of serotonin syndrome and its manifestation, it is just as possible that serotonin syndrome, if present, could have also have rendered SPC GE completely incapable of consent at the time of the encounter.

Setting aside the possibility of SPC GE being affected by serotonin syndrome, there was overwhelming evidence she was intoxicated by alcohol at the time of the assault and incapable of consent. Appellant was aware of her state of impairment. Appellant provided a statement to CID that SPC GE arrived at the room drunk and then continued to drink. According to appellant, SPC GE became so intoxicated that SPC Hamilton and appellant left her alone in the room to sleep. This evidence of impairment, appellant's knowledge of SPC GE's impaired state, and the discovery of SPC GE's DNA on appellant's penis presented a compelling case of appellant's guilt. With the state of this evidence and the speculative nature of appellant's claims concerning serotonin syndrome, we find appellant has not established a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Appellant has failed to meet his burden to show

that the trial defense counsel's errors, if any, were "so serious as to deprive the [appellant] of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge SCHASBERGER concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court