# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
SALUSSOLIA, ALDYKIEWICZ, and EWING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant AARON J. WHITMAN**
**United States Army, Appellant**

ARMY 20170550

Headquarters, 25th Infantry Division
Kenneth Shahan, Military Judge
Colonel Ian R. Iverson, Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA; Major Jack D. Einhorn, JA; Captain Benjamin J. Wetherell, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Major Jack D. Einhorn, JA; Captain Benjamin A. Accinelli, JA; Captain Benjamin J. Wetherell, JA (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Captain Marc B. Sawyer, JA; Captain Meredith M. Picard, JA (on brief).

28 June 2019

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ALDYKIEWICZ, Judge:

Following his unconditional guilty plea to conduct encompassing ten separate specifications, appellant asserts that his trial defense counsel were ineffective because they failed to advise him of a potential motion to suppress for one specification. For the reasons outlined below, we find no relief is warranted.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of attempted sexual assault of a child, five specifications of sexual assault of a child, three specifications of sexual abuse of a child, and one specification of possessing child pornography, in violation of Articles 80, 120b, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 920b, and 934 [UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for fifteen years, and reduction to the grade of E-1. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence

as provided for a dishonorable discharge, confinement for thirteen years, and reduction to the grade of E-1.

## BACKGROUND[1]

In January 2017, appellant responded to a Craigslist advertisement created by an undercover law enforcement agent posing as a fourteen-year-old girl. This response drew a reply, and the resulting conversation quickly devolved into appellant asking for photos, arranging a meet up, and promising to bring condoms. In fact, less than two hours after the initial reply, appellant drove to the decoy house designated for the meeting and was apprehended upon entry by multiple agents, who seized appellant's cell phone and condoms.

The resulting investigation by Army Criminal Investigation Command (CID) uncovered additional acts of online and sexual misconduct. This included appellant possessing child pornography and engaging in oral, vaginal, and anal sex with a thirteen-year-old girl after grooming her through explicit communications. Within these communications, appellant made repeated references to sexual experiences and desires, to include asking the young girl whether she had ever masturbated or had an orgasm. Appellant also sent her pictures of his exposed buttocks and erect penis.

The government charged appellant with twelve specifications related to attempted sexual assault of a child, attempted sexual abuse of a child, sexual assault of a child, sexual abuse of a child, and possessing child pornography, in violation of Articles 80, 120b, and 134, UCMJ.[2] The offenses carried a maximum punishment including more than 250 years of confinement.

Prior to trial, the parties entered into a pretrial agreement. As part of this agreement, appellant agreed to plead guilty to eleven of the twelve specifications, and the convening authority agreed to dismiss the final specification and disapprove any confinement in excess of thirteen years. Within the agreement, appellant also agreed to "waive all waivable motions, including motions to suppress evidence and motions to introduce [Mil. R. Evid.] 412 evidence."

During appellant's plea inquiry, the military judge discussed the "waive all waivable motions" provision. As part of this colloquy, the military judge noted this provision referenced "motions to suppress evidence," but he also confirmed that

---

[1] We have also considered the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and we have determined that they warrant neither discussion nor relief.

[2] The government initially charged fourteen specifications, but then dismissed two specifications prior to arraignment.

appellant understood "that this term of your pretrial agreement means that you give up the right to make any motion which by law is given up when you plead guilty."

Notably, during trial, the military judge rejected appellant's guilty plea for the lone specification of attempted sexual abuse of a child, and he also merged several specifications for purposes of sentencing. The military judge discussed both of these rulings with appellant prior to officially accepting his guilty plea. The end result was that appellant pleaded guilty to ten specifications and faced a maximum punishment including 135 years of confinement.

The military judge ultimately sentenced appellant to a dishonorable discharge, confinement for fifteen years, and reduction to the grade of E-1. Pursuant to the pretrial agreement, the convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for thirteen years, and reduction to the grade of E-1.

On appeal, appellant asserts that his trial defense counsel were ineffective by failing to "identify and advise" appellant of a potential Fourth Amendment violation. More specifically, appellant asserts that his counsel were deficient for failing to tell him that law enforcement exceeded the scope of the search authorization in locating the videos of child pornography on his cell phone.

In an affidavit filed to this court,[3] appellant asserts this information would have impacted his decision to plead guilty to The Specification of Charge III:

> I was never informed by my TDS counsel about any mistake made by CID in searching my phone, or that it was possible that the child pornography charge could be dismissed because of the search of the photos on my phone was outside the scope of the search warrant. If I had been advised of this violation, I would NOT had pled guilty, and I would have fought to have that charge dismissed. I would have contested the case at trial with judge alone.
>
> . . .

---

[3] Appellant moved to attach four documents on appeal: (1) his affidavit; (2) a CID Case Activity Summary; (3) the chain-of-custody document for the cell phone and condoms seized during his apprehension; and (4) a draft motion to suppress evidence prepared by his trial defense counsel.

3

> Why would I plead guilty to something the government can't prove because the evidence would be suppressed? I would have never pled guilty if I was informed about the issue with the scope of the search of my phone.

Appellant's affidavit does not address his comments during the plea inquiry about waiving all "motions to suppress evidence," but his brief explains this waiver was based on a *separate* motion to suppress. To support this explanation, appellant attached a draft motion to suppress evidence from his trial defense counsel related to a potential Fifth Amendment violation. Notably, this draft motion argued that, absent the alleged violation, the government "would not have discovered the evidence which led to the allegations of Charges II and III." As such, the potential Fifth Amendment violation encompassed nine additional specifications from the alleged Fourth Amendment violation.

Following appellant's claim of ineffective assistance of counsel, appellant's trial defense counsel submitted affidavits to this court. In their affidavits, both counsel firmly assert that they identified and researched the Fourth Amendment issue. Appellant's lead trial defense counsel wrote, "I am certain that I analyzed this issue in preparation for trial, decided a motion to suppress was unlikely to be successful, and discussed the issue with my co-counsel." The assistant trial defense counsel said the defense was "aware of and discussed the fact that law enforcement may have exceeded the scope of the initial search authorization." She added that these conversations "stand out in my memory" because the authorizing magistrate was subsequently assigned to Trial Defense Services, and the defense had to "wall him off from any discussions of the case."

Neither counsel, however, can remember whether they actually discussed this Fourth Amendment issue with appellant. Both counsel assert they "likely" discussed the issue with him, but neither have any firm notes or recollections of any such conversation. The lead counsel wrote, "I believe I did discuss this issue with him and indicated it was unlikely to succeed," but "[w]ell over a year after the trial, I cannot honestly confirm with one hundred percent certainty that I discussed in detail this specific potential motion with [him]." The lead counsel further explained that their primary focus was the Fifth Amendment issue, which they determined had a "higher chance of success" (albeit "less than 50 percent"), but appellant still "expressed his desire to pursue a deal to plead guilty to the offenses."

In their affidavits, both counsel describe their discussions with appellant about the pretrial agreement. Both counsel assert they discussed every provision with appellant, described their likelihood of success in a contested trial, and ensured that appellant understood the maximum punishment for the charged offenses. Pursuant to these conversations, the lead counsel stated that appellant "expressed his desire to pursue a plea deal in order to limit his exposure" and "desired to plea to the

offenses charged, which I still believe was the best way to limit his exposure in this case." Finally, lead counsel noted that during the pendency of the plea negotiations, the government was aware of additional "underage females" with whom appellant communicated, potentially exposing appellant to additional charges and "MRE 413" propensity evidence.

## LAW AND DISCUSSION

Ineffective assistance of counsel claims are reviewed de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015). To establish ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The two prongs of *Strickland* can be analyzed independently; if appellant fails either prong, his claim fails. *Strickland*, 466 U.S. at 697.

"An appellant must establish a factual foundation for a claim of ineffectiveness; second-guessing, sweeping generalizations, and hindsight will not suffice." *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005) (citing *United States v. Key*, 57 M.J. 246, 249 (C.A.A.F. 2002); *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000); *United States v. Gray*, 51 M.J. 1, 19 (C.A.A.F. 1999)).

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 689-90). Additionally, "the strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.'" *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

"In the guilty plea context, the first part of the *Strickland* test remains the same – whether counsel's performance fell below a standard of objective reasonableness expected of all attorneys." *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985)). To meet this burden, appellant must show his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. This presumption can be rebutted by "showing specific errors [made by defense counsel] that were unreasonable under prevailing professional norms." *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (citations omitted).

While the first prong remains the same for guilty pleas, "[t]he second prong is modified to focus on whether the 'ineffective performance affected the outcome of the plea process.'" *Bradley*, 71 M.J. at 16 (quoting *Hill*, 474 U.S. at 59). "[T]o satisfy [this] requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. (quoting *Hill*, 474 U.S. at 59). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Id*. at 16-17 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation omitted).

Most recently, in *Lee v. United States*, the Supreme Court explained that "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." 137 S. Ct. at 1967. Under the "unusual circumstances" of that case, *id*. at 1967, the Court concluded that "Lee's claim that he would not have accepted a plea had he known that it would lead to deportation is backed by substantial and uncontroverted evidence." *Id*. at 1969.

By contrast, in this case, the "contemporaneous evidence" undermines appellant's claim of how he would have pleaded but for the alleged deficiency. Appellant avers that if he had learned "that it was *possible* that the child pornography charge could be dismissed," then he "would have contested the case at trial." (emphasis added). The contemporaneous evidence clearly shows otherwise.

Most notably, the Fifth Amendment motion provided the exact possibility that appellant asserts would have caused him to plead not guilty. In fact, rather than merely attacking the single child pornography specification, the Fifth Amendment motion—which appellant himself attached to the record—sought to suppress the evidence for the child pornography specification and nine additional specifications. Put another way, the potential relief from the Fifth Amendment motion both subsumed and exceeded the potential relief from the Fourth Amendment issue. Further, his defense counsel believed this suppression motion, a motion appellant willingly and knowingly waived for the benefit of a deal, was the motion counsel believed had a greater likelihood of success.

Rather than contesting the case, however, appellant entered into a pretrial agreement that dismissed one specification and provided a set cap on confinement. For his part, appellant agreed to plead guilty to the remaining offenses and "waive all waivable motions," to include any "motions to suppress evidence." Appellant then discussed this clause on the record with the military judge, who confirmed that appellant understood "that this term of your pretrial agreement means that you give up the right to make any motion which by law is given up when you plead guilty."

Essentially, appellant declined to pursue the exact course of action that he now claims would have changed his plea.

In conclusion, when considering: (1) appellant's significant confinement exposure, (2) the overwhelming nature of the evidence against appellant and the egregious nature of the crimes committed, (3) the possibility of additional charges considering the information known by the government during the pendency of plea negotiations in appellant's case, and (4) appellant's informed decision to waive a motion that addressed the child pornography evidence as well as evidence related to additional specifications, we find appellant's claim to ring hollow. Under the circumstances of appellant's case, we find, at a minimum, that appellant has failed to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Bradley*, 71 M.J. at 16 (quoting *Hill*, 474 U.S. at 59).

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge SALUSSOLIA and Judge EWING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7