CUI

# UNITED STATES AIR FORCE
## COURT OF CRIMINAL APPEALS

_____

**No. ACM 40390**

_____

**UNITED STATES**
*Appellee*

**v.**

**Travis I. HOLT**
Airman First Class (E-3), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 14 December 2023

_____

*Military Judge*: Pilar G. Wennrich.

*Sentence*: Sentence adjudged 11 August 2022 by GCM convened at Joint Base Charleston, South Carolina. Sentence entered by military judge on 20 September 2022: Dishonorable discharge, confinement for 5 years, reduction to E-1, and forfeiture of all pay and allowances.

*For Appellant*: Major Kasey W. Hawkins, USAF.

*For Appellee*: Lieutenant Colonel G. Matt Osborn, USAF; Major Morgan R. Christie, USAF; Captain Olivia B. Hoff, USAF; Captain Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, DOUGLAS, and WARREN, *Appellate Military Judges*.

Judge WARREN delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge DOUGLAS joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

WARREN, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of two specifications of attempted sexual assault of a child who had attained the age of 12 but not attained the age of 16 years, and one specification of distribution of child pornography, in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 934.[1] The military judge sentenced Appellant, within the agreed-upon sentencing parameters established in Appellant's plea agreement, to a dishonorable discharge, confinement for five years, reduction to the grade of E-1, and forfeiture of all pay and allowances.[2] The convening authority took no action on the findings, and approved the sentence in its entirety.

Appellant raises a single issue on appeal: whether trial defense counsel provided ineffective representation during the clemency process by: (a) misstating the convening authority's clemency options in the defense counsel clemency memorandum; and (b) submitting a counter-productive letter from Appellant's parents as part of Appellant's clemency submission.

Finding no error that materially prejudiced a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

On 24 July 2022, Appellant entered into a plea agreement wherein he agreed to plead guilty to the attempted child sexual assault and child pornography distribution specifications set forth above. In exchange for his guilty pleas to the three specifications, the convening authority and Appellant agreed that a dishonorable discharge was mandatory and further agreed to confinement limitations. The plea agreement specified a sentence limitation of no less than three years and no more than seven years for each specification to which

---

[1] Based upon the date of the underlying misconduct to which Appellant pleaded guilty in this case, two versions of the Manual for Courts-Martial apply to references to the UCMJ. As to the Article 134 child pornography specification, *Manual for Courts-Martial, United States* (2016 ed.), applies. As to the Article 80 attempted child sexual assault specifications, the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*), applies. The 2019 *MCM* also applies to all references to the Rules for Courts-Martial in this opinion.

[2] A total of two charges consisting of nine total specifications were referred against Appellant, but pursuant to the plea agreement, the convening authority dismissed all remaining charges and specifications with prejudice after the entry of sentence for the offenses to which Appellant pleaded guilty.

Appellant was pleading guilty, with all terms of confinement to run concurrently. There were no other limitations on the sentence.

At his court-martial on 11 August 2022, Appellant pleaded guilty to attempting to intentionally touch, not through clothing, and attempting to penetrate with his penis, the genitalia of a child who had attained the age of 12 years, but not attained the age of 16 years. This attempt stemmed from an online texting exchange between Appellant and Special Agent SB, an undercover agent with the Department of Homeland Security, Homeland Security Investigations, who was posing as a 15-year-old minor child under an assumed name. Appellant made arrangements to meet Special Agent SB (whom Appellant believed to be a 15-year-old child) and traveled to a rendezvous site on Joint Base Charleston, South Carolina, on 20 November 2019, where he was apprehended by the Air Force Office of Special Investigations.

At his court-martial, Appellant also pleaded guilty to knowingly distributing child pornography. Appellant admitted that he distributed an image of exposed female genitalia he received from an online texting exchange with a minor female, DS. That distribution came in the context of a separate online texting exchange with another user who went by screen name "Anonymous." "Anonymous" presented as a 15-year-old girl while Appellant was pretending to be a 14-year-old girl. When "Anonymous" asked Appellant what he looked like, Appellant sent her a photo of DS's genitalia.

After the court-martial, on 18 August 2022 Appellant's lead trial defense counsel, Captain (Capt) MC, submitted a clemency package on Appellant's behalf, consisting of a one-page memorandum from Capt MC accompanied by a single attachment, a letter from Appellant's parents in support of the clemency request. Capt MC's memorandum recited the convening authority's limited options on clemency given the convicted misconduct and limitations imposed by Rule for Courts-Martial (R.C.M.) 1109(c)(5) and made a generic request for "any relief afforded to [Appellant] under the law." The entirety of that brief passage is as follows:

> Pursuant to R.C.M. 1109(c)(5), following a general [c]ourt-[m]artial, you may reduce, commute, or suspend, in whole or in part a reprimand, forfeiture of pay or allowances, reduction in pay grade, and/or confinement that does not exceed six months, *which does not apply in this case*. As such, I request speedy post-trial processing for [Appellant]'s case and any other relief afforded to [Appellant] under the law due to his service to the United States Air Force.

(Emphasis added).

Defense counsel's clemency response on Appellant's behalf included an accompanying letter from Appellant's parents, which conceded that "[Appellant] deserves the punishment awarded," and "[h]e did some terrible things." However, the letter went on to specifically request clemency for Appellant: "*We would also encourage and support a favorable clemency ruling* based upon positive and total treatment and rehabilitation." (Emphasis added). In context, the paragraph of Appellant's parents' clemency letter containing their plea for a "favorable clemency ruling" is as follows:

> As his parents, this is an extremely difficult sentence for us to process and almost surreal. While we believe he deserves the punishment awarded, we expect that he will receive the mental health treatment and counseling he desperately needs. He did some terrible things, but he is not a malevolent person. We understand his sentence of 5 years may be reduced by 1 year for good behavior. We would also encourage and support a favorable clemency ruling based on positive and total treatment and rehabilitation.
>
> . . . .
>
> The best outcome for us is for our son to get well and come back to us as soon as feasible after rehabilitation.

During the pendency of this appeal, Capt MC provided a post-trial declaration in response to an order of this court regarding Appellant's allegations that she was ineffective in her representation of Appellant during clemency. In that declaration, Capt MC affirms that she "counseled [Appellant] that the [c]onvening [a]uthority could reduce, commute, or suspend, in whole or in part, the reprimand, forfeiture of pay or allowances, and reduction in pay grade he received as part of his sentence." Capt MC also affirms that, during those consultations with Appellant, Capt MC understood Appellant's primary concern to be with the length of confinement he was facing because of his misconduct and the plea-agreement-prescribed confinement terms. Nonetheless, Capt MC and Appellant mutually agreed to "broadly ask for any relief the [c]onvening [a]uthority was willing to give," and Appellant never made any other specific mention as to any alternate clemency requests. Capt MC also affirmed that, prior to submitting Appellant's clemency package to the convening authority, Capt MC specifically discussed with Appellant the possibility of eliciting a clemency letter from Appellant's parents to highlight some of Appellant's rehabilitation potential, and that "[Appellant] wanted a letter written by his mother to be included, if she was willing to write one." While Capt MC's declaration does not mention whether she re-conferred with Appellant following receipt of the letter and prior to her submitting it as part of the clemency package, there is no evidence in the record that Appellant opposed submitting the

letter at the time his clemency package was submitted. Notably, Appellant did not submit a declaration to this court in support of his assignment of error.

## II. DISCUSSION

Appellant premises his claim that his trial defense counsel was ineffective in clemency upon two bases: (1) counsel misstated the law in the clemency memorandum to the convening authority, and (2) counsel attached a counter-productive support letter from Appellant's parents to the clemency package. For the reasons set forth below, we are unpersuaded that counsel actually misstated the law and likewise find no deficient performance in counsel's tactical decision as to what she submitted during clemency.

### 1. Law

The Sixth Amendment[3] guarantees an accused the right to effective assistance of counsel at all phases of trial and post-trial processing. *See United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001) (citation omitted). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). To prevail on an ineffective assistance of counsel claim, an appellant bears the burden of demonstrating both deficient performance from defense counsel and prejudice. *United States v. Captain*, 75 M.J. 99, 101 (C.A.A.F. 2016) (citation omitted). Ultimately, we conduct de novo review for ineffective assistance of counsel claims. *Id.* at 102 (citation omitted).

"An appellate court's evaluation of attorney performance is made from counsel's perspective at the time of the conduct in question." *United States v. Marshall*, 45 M.J. 268, 270 (C.A.A.F. 1996) (citing *Strickland*, 466 U.S. at 689).

The burden is on the appellant to demonstrate deficient performance. *See United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006). "[C]ourt[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (internal quotation marks omitted) (quoting *Strickland,* 466 U.S. at 689). We consider the following questions to determine whether the presumption of competence has been overcome: (1) is there a reasonable explanation for counsel's actions; (2) did defense counsel's level of advocacy fall measurably below the performance ordinarily expected of fallible lawyers; and (3) if defense counsel were ineffective, is there a reasonable probability that, absent the errors, there would have been a different

---

[3] U.S. CONST. amend. VI.

result. *See United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

In assessing claims of ineffective assistance of counsel, we do not look at the success of the trial defense attorney's strategy "but rather whether counsel made an objectively reasonable choice in strategy from the alternatives available at the time." *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001) (internal quotation marks and citation omitted). In making this determination, courts must be "highly deferential" to trial defense counsel and make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. This specifically applies to trial defense counsel clemency submissions on behalf of an accused. *See United States v. Hood*, 47 M.J. 95, 97 (C.A.A.F. 1997) (concluding that trial defense counsel are empowered to make tactical post-trial decisions for the content of clemency submissions, but should consult "with the client where feasible and appropriate" before acting) (quoting *United States v. MacCulloch*, 40 M.J. 236, 239 (C.M.A. 1994)).

"Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *United States v. Datavs,* 71 M.J. 420, 424 (C.A.A.F. 2012) (citing *Gooch*, 69 M.J. at 362–63). However, defense counsel discretion is not limitless, and "defense counsel may not . . . refuse to submit matters offered by the [accused] or submit matters over the [accused's] objection." *Hood*, 47 M.J. at 97 (citations omitted). Similarly, defense counsel perform deficiently if they blindly submit clemency materials without first reviewing them and making an "evaluative judgment" on the relative merits of submitting that material. *See Gilley*, 56 M.J. at 124 (citation omitted). Ultimately, in reviewing the decisions and actions of trial defense counsel, this court ordinarily does not "second-guess strategic or tactical decisions," *see United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993) (internal quotation marks and citation omitted), because defense counsel receive wide latitude in making tactical decisions. *See Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (quoting *Strickland*, 466 U.S. at 689). Accordingly, we will only find ineffective assistance of counsel in those limited circumstances where a purported "strategic" or "tactical" decision is unreasonable or based on inadequate investigation. *See United States v. Davis*, 60 M.J. 469, 474 (C.A.A.F. 2005).

Finally, when assessing claims of ineffective assistance of counsel, military appellate courts apply the same prejudice standard as the one defined by the United States Supreme Court. To establish prejudice, an appellant must "demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks and citations

omitted), *favorably cited by Datavs*, 71 M.J. at 424. In accessing potential prejudice for alleged clemency errors we consider whether Appellant has made a "colorable showing of possible prejudice" given the inherently discretionary nature of the convening authority's clemency decision. *See United States v. Lowe*, 58 M.J. 261, 264 (C.A.A.F. 2003) (citing *United States v. Anderson*, 53 M.J. 374, 378 (C.A.A.F. 2000)). As part of making a colorable showing of possible prejudice, an appellant must "stat[e] what, if anything, [he] would have . . . submitted [in an alternate clemency request]." *United States v. Gilbreath*, 57 M.J. 57, 61 (C.A.A.F. 2002) (quoting *United States v. Chatman*, 46 M.J. 321, 323 (C.A.A.F. 1997)).

### 2. Analysis

Appellant's claim is essentially that his trial defense counsel, Capt MC, portrayed an ignorance of the law and facts by virtue of a grammar error in her clemency response on his behalf. We are not persuaded.

First, we find no deficient performance in what amounts to Capt MC constructing a sentence with a dangling element[4] in her clemency memorandum on Appellant's behalf *(i.e.*, the phrase "which does not apply in this case"). The sentence preceding that dangling element in defense counsel's clemency memorandum accurately summarized the convening authority's clemency options for Appellant's sentence, given the limitations of Article 60, UCMJ, and R.C.M. 1109. We do agree with Appellant that the dangling element of "which does not apply in this case" arguably creates some ambiguity in terms of whether that phrase was meant to apply to the entire list preceding it or to the list item immediately preceding it.[5] Nonetheless, that ambiguity is resolved by

---

[4] A "dangling element" is a verbal phrase (participle, gerund, or infinitive) used without an explicit subject. Because this phrase has no stated subject to which it can refer, it unintentionally refers to an inappropriate subject in the main clause. *See generally* BRYAN A. GARNER, GARNER'S MODERN ENGLISH USAGE 243 (danglers), 597 (miscues (B)) (4th ed. 2016).

[5] We note that Appellant's interpretation that the dangling element applies to the entire list is belied by one of the cannons of statutory construction, the "last antecedent qualifier." This canon of construction entails that a qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to only the immediately preceding item. *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); s*ee also Nobelman v. American Savings Bank*, 508 U.S. 324, 330 (1993) (noting that the last antecedent qualifier rule is "quite sensible as a matter of grammar"); *FTC v. Mandell Brothers, Inc.*, 359 U.S. 385, 389 (1959) ("[The] limiting clause is to be applied only to the last antecedent.").

Applying this principle to this case, a matter of grammar, we note that the relative pronoun "which" refers to a singular antecedent "does"—indicating that the phrase

examining the entirety of the brief clemency submission in conjunction with the letter from Appellant's parents. While far from a model of clarity, we conclude that the phrase was only intended to modify the final item in the preceding list, to wit: "confinement that does not exceed six months." So construed, that phrase served as an implied reference to the fact that the convening authority has no authority to reduce Appellant's confinement because Appellant was sentenced to *more* than six months of confinement—that is, Capt MC's phrase was merely a candid concession that the convening authority's ability to reduce confinement that does not exceed six months "does not apply in this case."

To conclude otherwise (*i.e.*, that Capt MC intended the phrase "which does not apply in this case" to apply to *each* of the preceding list of sentencing components, including: reprimand, forfeiture of pay and allowances, reduction in pay grade, and confinement) would be to conclude that Capt MC was flatly ignorant of Appellant's sentence, the law, or both. After all, aside from confinement and a punitive discharge, Appellant was sentenced to a reprimand, total forfeitures of all pay and allowances, and reduction in pay grade—and, as she recited in her clemency memorandum, R.C.M. 1109(c)(5) empowers convening authorities to reduce, commute, or suspend, in whole or in part, each of those sentence components.[6] Further, the very next sentence of the defense clemency memorandum refutes this interpretation because it explicitly requests "any other relief afforded to [Appellant] under the law." Additionally, the attachment to the memorandum (clemency letter from Appellant's parents) also explicitly requested relief.

Under the circumstances, while the dangling element, "which does not apply in this case," created ambiguity in Capt MC's phrasing, the surrounding

---

"which does not apply in this case" refers to one object only. In this case, that object, according to the last antecedent qualifier cannon of construction, must be the confinement term. *See also Subject-verb Agreement,* The Writing Center, University of Wisconsin-Madison, https://writing.wisc.edu/handbook/grammarpunct/subjectverb/ (last visited 22 Nov. 2023) *("*A relative pronoun ('who,' 'which,' or 'that') used as a subject of an adjective clause takes either a singular or plural verb in order to agree with its antecedent.").

[6] We note Capt MC asserts in her post-trial declaration that she intended the contingent phrase "which does not apply in this case" to only modify the preceding phrase "less than six months of confinement." However, we do not rely upon trial defense counsel's assurances in this regard. We conclude that insofar as the convening authority did not have the benefit of this clarification of the intended effect of Capt MC's clemency memorandum language when the convening authority was reviewing that memorandum, Capt MC's post-hoc assurances are inapposite to this situation. Rather, we interpret that passage utilizing only the tools of existing grammar and style, and in the context of the document as a whole.

text and entirety of the clemency package resolve that ambiguity by demonstrating that Capt MC's memorandum was: (1) candidly advising the convening authority that he had no authority to reduce Appellant's confinement; but (2) did have authority to reduce, commute, or suspend, in whole or in part the reprimand, forfeiture of all pay and allowances, and reduction in grade.

Second, we find no deficient performance in Capt MC's tactical decision to submit a clemency letter from Appellant's parents. Here, Capt MC affirms that she consulted with Appellant *prior* to eliciting a letter from Appellant's parents, and that Appellant himself desired to elicit and submit a clemency letter from his parents. Appellant does not challenge the veracity of Capt MC's statements in her post-trial declaration. Accordingly, we opt to accept that declaration as fact. *See United States v. Ginn*, 47 M.J. 236, 243 (C.A.A.F. 1997) (quoting *United States v. Johnson,* 43 M.J. 192, 195 (C.A.A.F. 1995)) ("[F]indings of fact may be made by Court of Criminal Appeals where no conflict exists between affidavits submitted by the parties."). Additionally, Appellant does not declare that he advised Capt MC that he wanted her to consult with him after receiving the letter but before submitting it on his behalf.

Assuming that Capt MC did not re-confer with Appellant prior to submitting the clemency letter as part of Appellant's clemency package, under the prevailing law and the facts of this case, Capt MC was still authorized to make that tactical determination. Here, she could reasonably rely upon her prior consultation with Appellant as continuing consent to provide such a letter when and if procured. In contrast to *Gilley* and *Hood*, here: (1) Capt MC explicitly consulted with and received direction from Appellant *prior* to seeking a clemency letter from Appellant's parents, and (2) the letter here contained no counter-productive comments likely to inflame the convening authority. *Cf. Gilley,* 56 M.J. at 124 (finding deficient performance in defense counsel's submission of three clemency letters from appellant's family members which included a "scathing diatribe" directing profane and insulting language at all counsel, court members, the military judge, and the convening authority); *Hood*, 47 M.J. at 96 (finding deficient performance in defense counsel submitting three clemency letters without appellant's knowledge which contained complaints of the "rudeness and lack of respect" shown by two captains, a first sergeant, a sergeant, and a "chief" during the course of Hood's court-martial). Absent such obvious counter-productive information in the letter at issue here, and in the absence of an overt objection or request for consultation by Appellant prior to its submission, we find no deficient performance in submitting the letter. *See Hood,* 47 M.J. at 97 ("Defense counsel has primary responsibility for strategic and tactical decisions, 'after consultation with the client where feasible and appropriate.'" (Citations omitted).).

In the end, while Capt MC's tactic here was ultimately unsuccessful in securing clemency for Appellant, that is not the measure of effective

representation. *See Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."). We conclude that submitting a clemency request with a reasonable concession as to the appropriateness of punishment, while still earnestly asking the convening authority to dispense mercy in light of Appellant's putative rehabilitation potential, was a reasonable choice.

Because Appellant failed to carry his burden to demonstrate deficient performance by his trial defense counsel, we need not proceed to analyze possible prejudice in this case. *See Datavs*, 71 M.J. at 424–25.[7]

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[7] Nonetheless, even *assuming arguendo* error by trial defense counsel, Appellant failed to demonstrate a "colorable showing of possible prejudice" for any alleged deficient performance here. Appellant provided no post-trial declaration, and so no articulation as to what, if any, alternate clemency materials or request he was interested in submitting. This absence of information is fatal to Appellant's claim. *See Perez*, 64 M.J. at 244 (citations omitted) (assuming that "defense counsel failed to consult with [a]ppellant before submitting a clemency petition and that such performance was deficient;" appellant failed to provide "specific information about what he or others would have submitted" in support of his clemency petition; and "[i]n the absence of such information," appellant failed to demonstrate prejudice under the second prong of the ineffective assistance of counsel test).